No. 11-10192

_____

_____

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

HASSAN ABPIKAR,

     Defendant-Appellant.     /

On Appeal From the United States District Court
For the Northern District of California
Case No. 5:08-cr-00560-RMW-1
Honorable Ronald M. Whyte, Presiding

**APPELLANT'S OPENING BRIEF**

ERIK G. BABCOCK (172517)
717 Washington St., 2d Floor
Oakland, CA 94607
(510) 452-8400 tel.
(510) 452-8405 fax.
erik@babcocklawoffice.com

Attorney for Appellant
HASSAN ABPIKAR

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

JURISDICTIONAL STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . 1

BAIL STATUS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ISSUES PRESENTED FOR REVIEW . . . . . . . . . . . . . . . . . . . . . . 2

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

FACTUAL AND PROCEDURAL BACKGROUND . . . . . . . . . . . 5

      A.    Offense Conduct . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      B.    Procedural History . . . . . . . . . . . . . . . . . . . . . . . . . . 14

LAW AND ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

I.    THE JUDGMENT OF CONVICTION ON COUNTS
    ONE AND THREE FOR FAILURE TO DISCLOSE
    ALL PRIOR CRIMINAL HISTORY ON THE FORM
    N-400 MUST BE REVERSED AS
    CONSTITUTIONALLY INSUFFICIENT UNDER
    <u>BRONSTON</u> BECAUSE THE FORM DOES NOT
    REQUIRE DISCLOSURE OF ALL PRIOR CRIMINAL
    HISTORY, AND ALL OF APPELLANT'S ANSWERS
    ABOUT HIS CRIMINAL HISTORY WERE TRUE . . . . . . 16

      A.    Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . 16

      B.    Applicable Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

      C.    The Insufficiency of the Evidence on
          Counts One and Three Is Plain Because The
          Verdict for Making False Statements Is
          Based On Responses By Appellant About
          His Criminal History That Were

Unambiguously True  . . . . . . . . . . . . . . . . . . . . . . . . 20

D.   The Error Was Prejudicial Because It
     Affected His Substantial Rights, and This
     Court Should Exercise Its Discretion
     Because It Seriously Affects the Fairness of
     the Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

II.   THE JUDGMENT OF CONVICTION ON COUNTS
      FOUR AND SIX FOR FAILURE TO DISCLOSE HIS
      ARREST AFTER HE FILLED OUT THE FORM AND
      BEFORE THE INTERVIEW SHOULD BE REVERSED
      FOR PLAIN ERROR BECAUSE THERE WAS NO
      EVIDENCE ADMITTED AT TRIAL TO SHOW THAT
      ABPIKAR WAS EVER ASKED IF HE HAD BEEN
      ARRESTED BETWEEN THE TIME HE FILLED OUT
      THE FORM AND THE INTERVIEW . . . . . . . . . . . . . . . . . 24

A.   Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . 24

B.   The Insufficiency of the Evidence On Counts Four
     and Six Is Plain Because Abpikar Was Convicted
     Of Perjury For Failing To Disclose That He Was
     Arrested Between The Time He Completed The
     Form N-400 But Before The Citizenship Interview
     When The Form Did Not Ask About Subsequent
     Arrests And Jio Did Not Testify That He Ever
     Asked Abpikar To Disclose Subsequent Arrests
     During the Interview . . . . . . . . . . . . . . . . . . . . . . . . . 25

C.   The Error Is Plain and Prejudicial Because It
     Affected Abpikar's Substantial Rights, and This
     Court Should Exercise Its Discretion Because The
     Error Seriously Affects the Fairness of the
     Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

III.    THE JUDGMENT OF CONVICTION ON COUNTS
        ONE, TWO AND THREE SHOULD BE REVERSED
        AS TIME-BARRED BECAUSE THE EVIDENCE AT
        TRIAL SHOWS THESE OFFENSES WERE NOT
        CHARGED UNTIL MORE THAN FIVE YEARS
        AFTER THE OFFENSES HAD BEEN COMMITTED  . . .  27

        A.    Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . .  27

        B.    Counts One Through Three Were Time-Barred
              Because They Were Committed On September 19,
              2004 But Not Charged Until November 24, 2009  . . .  27

        C.    The Original Indictment Did Not Toll the Charges
              in the Superseding Indictment Because The
              Superseding Indictment Added New Charges and
              Impermissibly Broadened The Existing Charges In
              The Original Indictment  . . . . . . . . . . . . . . . . . . . . . . .  30

              1.    Applicable Law On Tolling  . . . . . . . . . . . . . . .  30

              2.    Procedural Background  . . . . . . . . . . . . . . . . . .  31

              3.    The New Charges Under
                    Sections 1001 and 1621 Were
                    Not Tolled by the Original
                    Indictment Because They Were
                    Not Charged In the Original
                    Indictment . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  32

              4.    The Newly Alleged Violation
                    of Section 1015 in Count Two
                    Impermissibly Broadened the
                    Original Charge So It Should
                    Not Relate Back for Tolling
                    Purposes  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  36

iii

D.    The Error Was Not Harmless Because Abpikar Was
       Convicted of Three Counts That Were Time-Barred . 37

IV.  THE JUDGMENT OF CONVICTION MUST BE
      REVERSED FOR PLAIN ERROR BECAUSE THE
      COUNTS WERE MULTIPLICITOUS:  THE
      REPETITION OF THE SAME FALSEHOODS IN
      RESPONSE TO THE SAME QUESTION WERE
      CHARGED AS TWO SEPARATE COUNTS  . . . . . . . . . . 38

      A.    Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

      B.    Applicable Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

      C.    Counts 1 and 4 are Multiplicitous, as are
             Counts 2 and 5, and  3 and 6 -- The
             Judgment of Conviction On One Of Each of
             the Three Sets of Counts Must Be Reversed
             for Plain Error Because Abpikar Made The
             Identical Statement In Response To The
             Same Questions Each Time  . . . . . . . . . . . . . . . . . . . . 40

V.   THE CHARGES SHOULD HAVE BEEN DISMISSED
      BECAUSE THE TRIAL OF APPELLANT'S CASE
      WAS DELAYED DUE TO COURT CONGESTION IN
      VIOLATION OF THE SPEEDY TRIAL ACT  . . . . . . . . . . 43

      A.    Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

      B.    Procedural Background  . . . . . . . . . . . . . . . . . . . . . . . 43

      C.    Applicable Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

      D.    The Judgment of Conviction Should Be Reversed, and
             The Charges Dismissed, Because The Continuance of the
             August  9, 2010 Trial Date Was Clearly Based On Court
             Congestion And Resulted In A Violation of the Speedy

Trial Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

VI.   THE JUDGMENT MUST BE REVERSED BECAUSE
      ABPIKAR  RECEIVED CONSTITUTIONALLY
      INEFFECTIVE ASSISTANCE OF COUNSEL WHEN TRIAL
      COUNSEL FAILED TO MAKE A MOTION FOR
      JUDGMENT OF ACQUITTAL OR A MOTION FOR NEW
      TRIAL BASED ON ANY OF THE ISSUES SET FORTH
      ABOVE IN SECTIONS I THROUGH V . . . . . . . . . . . . . . . 51

      A.    Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . 51

      B.    Applicable Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

      C.    The Court Can Address The Claim Of Counsel's
            Effectiveness On Direct Appeal Because The Record is
            Sufficient and There Could Be No Valid Tactical Reason
            Not To Make A Motion For Judgment of Acquittal
            Based on the Evidence Introduced At Trial . . . . . . . . 52

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

STATEMENT OF RELATED CASES . . . . . . . . . . . . . . . . . . . . . . 56

BRIEF CERTIFICATE OF COMPLIANCE  . . . . . . . . . . . . . . . . 57

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

# TABLE OF AUTHORITIES

### <u>Cases</u>

<u>Blockburger v. United States</u>,
   284 U.S. 299 (1932) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  35

<u>Bronston v. United States</u>,
   409 U.S. 352 (1973) . . . . . . . . . . . . . . . . . . . . . . . . .  16, 18, 22

<u>Gebhard v. United States</u>,
   422 F.2d 281 (9th Cir. 1970) . . . . . . . . . . . . . . . . . . . . . . . .  39

<u>Heishman v. Ayers</u>,
   621 F.3d 1030 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . .  51

<u>Jackson v. Virginia</u>,
   443 U.S. 307, 319 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

<u>Strickland v. Washington</u>,
   466 U.S. 668 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  51

<u>Toussie v. United States</u>,
   397 U.S. 112 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . .  31, 35

<u>United States v. Aviles-Alvarez</u>,
   868 F.2d 1108 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . .  43

<u>United States v. Awad</u>,
   551 F.3d 930 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . .  38

<u>United States v. Benford</u>,
   574 F.3d 1228 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . .  52

<u>United States v. Bennett</u>,
   702 F.2d 833 (9th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . 39-40

United States v. Charnay,
 537 F.2d 341 (9th Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . 34

United States v. Contreras,
 63 F.3d 852 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . 43

United States v. Cotton,
 535 U.S. 625 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

United States v. Culliton,
 328 F.3d 1074 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . 19

United States v. Doss,
 630 F.3d 1181 (9th Cir. 2011), as amended on reh'g
 in part (Mar. 15, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

United States v. Dunne,
 348 F.3d 1158 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . 29

United States v. Grady,
 544 F.2d 598 (2nd Cir. 1976) . . . . . . . . . . . . . . . . . . . . . 31, 36

United States v. Habig,
 390 US. 222 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

United States v. Italiano,
 894 F.2d 1280 (11th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . 30

United States v. Jeronimo,
 398 F.3d 1149 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . 52

United States v. Matthews,
 589 F.2d 442 (9th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . 19

United States v. McKenna,
 327 F.3d 830 (9th Cir.), cert. denied,
 540 U.S. 941 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

vii

United States v. Nance,
    666 F.2d 353 (9ᵗʰ Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . 47

United States v. Olsowy,
    836 F.2d 439 (9th Cir. 1988) . . . . . . . . . . . . . . . . . 39, 41, 42

United States v. Orozco-Santillan,
    903 F.2d 1262 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . 17

United States v. Pacheco,
    912 F.2d 297 (9ᵗʰ Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . 30

United States v. Rose,
    570 F.2d 1358 (9ᵗʰ Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . 34, 35

United State v. Sears Roebuck & Company, Inc.,
    785 F.2d 777 (9ᵗʰ Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . 31, 34

United States v. Stauffer,
    922 F.2d 508 (9ᵗʰ Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . 16, 25

United States v. Stearns,
    550 F.2d 1167 (9th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . 39

United States v. UCO Oil Co.,
    546 F.2d 833 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

United States v. Vargas-Castillo,
    329 F.3d 715 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . 38

United States v. Wilsey,
    458 F.2d 11 (9ᵗʰ Cir. 1972) . . . . . . . . . . . . . . . . . . . . . . . . 32-33

United States v. Workinger,
    90 F.3d 1409  (9ᵗʰ Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . 27

United States v. Zvi,

168 F.3d 49 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . .  36

## **Statutes**

18 U.S.C. § 1001 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  passim

18 U.S.C. § 1015 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  passim

18 U.S.C. § 1621 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  passim

18 U.S.C. §§ 3161-3174 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  46

18 U.S.C. § 3282 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  28

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

## **Rules**

Fed. R. Crim. Proc., Rule 29 . . . . . . . . . . . . . . . . . . . . . . . . . . . .  passim

Fed. R. Crim. Proc., Rule 33 . . . . . . . . . . . . . . . . . . . . . . . . . . . .  passim

## <u>APPELLANT'S OPENING BRIEF</u>

## JURISDICTIONAL STATEMENT

In an indictment filed August 20, 2008, in the United States District Court for the Northern District of California, appellant Hassan Abpikar was charged with three counts of making a false statement under oath relating to naturalization under 18 U.S.C. § 1015(a)[1].  ER 709.  On November 24, 2009 a Superseding Indictment was filed charging two counts of false statements under § 1015(a), two counts of failing to disclose material information to a government agency under § 1001(a)(1), and two counts of perjury under § 1621.[2] ER 699.

Following a jury trial, appellant was convicted of all charges. ER 80-87.  The district court sentenced appellant to 36 months in custody, 3 years of supervised release, a $5,000 fine, and a $600

_____

[1]

  All further statutory references are to Title 18 of the United States Code.

[2]

  We abbreviate record references as follows: Excerpts of Record "ER"; the Clerk's Record "CR"; and reporters' transcripts as "RT." The majority of the trial took place on October 28, 2010; therefore, all further "RT" references are to the reporter's transcript of October 28, 2010 unless another date is noted.

1

special assessment.  ER 6-9.  Appellant filed timely notice of appeal.

ER 1.  This Court has jurisdiction under 28 U.S.C. section 1291.

## BAIL STATUS

Appellant completed the 36 month custodial sentence imposed

in this case and is now out of custody on supervised release in the

Northern District of California.

## ISSUES PRESENTED FOR REVIEW

1.    Should a conviction for making a false statement to a federal

agency by failing to disclose all prior criminal history on a

citizenship application form be reversed when the application

form does not require disclosure of all prior criminal history,

and all of the information provided by the applicant was

literally true?

2.    Should a conviction for failure to disclose an arrest that

occurred after the submission of a citizenship application but

before the citizenship interview be reversed for plain error

when the form does not require disclosure of information

occurring after the filing of the form but before the interview,

and the federal interviewer does not remember the interview

2

and does not testify it was his practice to ask about intervening arrests?

3.    Should convictions for perjury (§ 1621)[3] and false statements to a government agency (§ 1001) based on a federal form be reversed as time-barred where the offenses are first charged in an indictment filed not more than five years after the government says it received the form, but more than five years after the form was filled out and signed?

A.    Does the timely filing of charges under § 1015, based on the same alleged falsehoods as the later-filed charges, toll the statute of limitations for later charges under different code sections?

4.    Is an indictment multiplicitous when it charges the repetition of the same falsehoods in response to the same questions, on a later date, as separate offenses?

5.    Is it a violation of the Speedy Trial Act to exclude time when a trial is continued because the court is unavailable since it is

---

[3]

All further statutory references are to Title 18 of the United States Code unless otherwise noted.

3

already in trial in another case?

6.    Is a claim of ineffective assistance of counsel cognizable on

direct appeal when it is based on the failure of trial counsel to

make either a motion for judgment of acquittal or a motion for

new trial and all of the issues are based solely on the evidence

that was introduced at trial?

## SUMMARY OF ARGUMENT

This court should reverse the judgment of conviction because appellant Hassan Abpikar did not receive a fair trial. He was originally indicted on charges that were timely, but the government then superseded and added new charges that were untimely. The new superseding indictment also charged the same offenses multiple times by alleging that every time he gave the same answer to the same question it was a new, and separate, federal offense. His trial was continued serveral times against his wishes. The second-to-last time the trial was continued was plainly because of court congestion: the district court was unavailable and embroiled in another trial, and time was improperly excluded on that basis.

At the most basic level, the charges against appellant were

4

unfair because they were premised on the idea that he failed to disclose all of his prior criminal history on a federal citizenship application, a form N-400, that never expressly asked or required him to disclose all prior criminal history.   Appellant honestly answered the questions that were asked, including answering yes to the questions on whether he had any prior arrests, charges and convictions.  The indictment was premised on the theory that Abpikar failed to disclose a 25 year old arrest, charge and conviction in Oklahoma, but the form did not ask or require him to identify each and every arrest, charge or conviction.  Adding insult to injury, the federal employee who interviewed Abpikar and reviewed his citizenship application form  admitted that he had Abpikar's rap sheet in hand and reviewed it when he saw that Abpikar answered "yes" to the question of whether he had ever been arrested.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    Offense Conduct

In 2004, Abpikar submitted an "Application for Naturalization," a form N-400, to Citizenship Immigration Services ("CIS"), a division

of the Department of Homeland Security.  ER 487, 266-276.[4]  The application was reviewed, and Abpikar interviewed, by CIS Adjudicating Officer Jio on May 18, 2005.  ER 488; RT 38.  At the time, Jio interviewed 13 to 14 citizenship applicants a day.  ER 492; RT 42.

When he testified during the trial of this case, Office Jio said that he did not actually recall his interview with Abpikar.  ER 498; RT 48. He stated that he interviewed so many thousands of applicants that they all became "a little blur."  Id.  However, he reviewed the citizenship application from Abpikar and recognized his signature on the form.  ER 501; RT 51.  Jio testified that it was his practice, at the beginning of each citizenship interview, to put the applicant "under oath."  ER 493-494; RT 43-44.  He would then "review" the N-400 form with the applicant. ER 494; RT 44.  He would start at page one and "go in order" through the application.  Id.  He said he then ensured that the applicant signed the form in two places, one for the interview and one for the oath. ER 496; RT 46.

---

[4]

   The form N-400 at issue was admitted into evidence at trial as Exhibit 1 and is located in the excerpts at pages 266-276.

6

Jio testified that two reasons a citizenship application "might" be denied were for making false statements in the application, and for criminal acts. ER 496-497; RT 46-47. He said the CIS looked at the 5 years immediately preceding the application more "carefully" than earlier years for criminal acts that might bar them from naturalization on moral character grounds. ER 497; RT 47. Jio testified that his "general rule" was that if he found criminal activity within the preceding 5 years he would then look before the 5 year period for other criminal acts. ER 498; RT 48.

Jio testified that although he conducted a naturalization interview with Abpikar on May 18, 2005, the N-400 was originally signed by Abpikar under penalty of perjury on September 19, 2004. ER 523; RT 73. Jio testified that the application was date stamped as having been received on November 24, 2004, but that this stamp was not by his office but "by the office that receives applications." ER 501; RT 51. Both Jio and Abpikar signed the application on May 18, 2005. ER 523-524; RT 73-74.

In Part 3 section G, appellant checked the box "single, never married" in response to the question "What is your marital status?" ER

7

503; RT 53.  The form also asked how many times the applicant had previously been married.  Appellant did not indicate anywhere on the form, or verbally during the interview, that he had been previously married. ER 504-508; RT 54-57.   Jio testified that it was important to CIS to find out if the applicant had been married to determine how they had obtained their green card. ER 506-507; RT 56-57.  Jio admitted that he looked at Abpikar's green card the day of the interview, and that the green card indicated Abpikar had been married. ER 547; RT 97.  Jio claimed he did not notice that particular information on the green card. Id.  However, he claimed that he asked Abpikar about his marital status during the interview.  ER 503; RT 53.

Part 8 section A of the form asked "how many times have you been married." ER 270; Abpikar had left that blank.  Jio then wrote in red ink "0" for that question because that is what Abpikar told him. ER 270, 504, RT 54.

Ronnette Mayuiers testified that she married Abpikar in 1982 for him to get citizenship. ER 608; RT 158-160.  They never lived together, and the marriage was never consummated. ER 610; RT 160.  They were married for about one and a half years and divorced in 1984.  ER 611;

8

RT 161.

In Part 4 section A on the application, Abpikar stated his residence address was 3254 Fleur De Lis Court, San Jose, California. ER 268, ER 508; RT 58.   Based on the information in the residence history section of the form, Jio understood this to mean that Abpikar had lived there for at least five years.   Id. at 59.   Cherryminn Caparas testified that he owned the property at 3254 Fleur De Lis Court from 1999 to 2009, and that he had never rented to Abpikar and did not know Abpikar.   ER 284-286; RT 11/1/2010 at 8-10.   Teresa Tantay testified that she rented the residence and lived there from 2002 to 2009, did not know appellant, and never subleased to him.   ER 290-291; RT 11/1/2010 at 14-15.

When Jio was asked whether the fact that Abpikar did not live at the Fleur De Lis address would have influenced his decision, Jio said that if appellant he did not live in the San Jose area for at least 3 months, then he would not have been eligible to apply to naturalize at that office and would have to apply at the CIS office where he previously lived. ER 509-510; RT 59-60.

Jio testified that good moral character was a "major factor" in the

9

process.  ER 511; RT 61.  Applicants are required to disclose their criminal history because it reflects on their moral character and influences the naturalization decision. ER 511-512; RT 61- 62.

Part 10 section D of the citizenship application asks several numbered questions about criminal history, including the following:

> Question 16. Have you EVER been arrested, cited or detained by any law enforcement officer . . . for any reason?
>
> Question 17. Have you EVER been charged with committing any crime or offenses?
>
> Question 18.  Have you EVER been convicted of a crime or offense?

ER 274.

Abpikar answered "yes" to each of these questions.  He also answered "yes" to the question of whether he had ever received a suspended sentence, been placed on probation or parole, and whether he had ever been to jail or prison (Questions 20 and 21). ER 274.

On the form immediately following these questions, the application then states:

> If you answered "Yes" to any of questions 15 through 21, complete the following table.  If you need more space, use a separate sheet of paper to give the same information.

10

ER 274.

The table has four columns and three spaces below each column.

The headers for each columns, in order, state:

- Why were you arrested.
- Date arrested, cited, detained or charged.
- Where were you arrested, cited, detained or charged.
- Outcome or disposition of the arrest, citation, detention or charge."

ER 274.

Abpikar filled in all 12 boxes provided on the table. Each box was filled with information relevant to what was requested. He provided information about three separate criminal offenses in San Jose, California from 1993, 1995 and 1998. Abpikar did not attach a separate page, and he did not include information about any arrests or charges before 1993, including any information about any charges in Oklahoma. He also did not list any arrests from 2005. ER 274.

Jio testified that, based on the red marks he made on the form, he asked Abpikar Question 16 (whether he had ever been arrested, cited or detained) but never asked Abpikar about Questions 17, 18 and 19. The reason for this was that once Abpikar answered yes to Question 16, Jio just "looked at the rap sheet." ER 514; RT 64.

11

Jio said if he had known Abpikar was charged with or convicted of a felony offense for telephoning a bomb threat, that this information would have influenced his naturalization decision. ER 517-518; RT 67-68. On cross examination, Jio admitted that he reviewed Abpikar's rap sheet during the interview, and the rap sheet listed the Oklahoma conviction. ER 539; RT 89.

Jio said Abpikar did not tell Jio at the interview that he had been arrested just four days earlier, on May 14, 2005, for burglary, receiving stolen property, possession of burglary tools, and theft because he would have made a notation on the form of that information. ER 519, 572; RT 69, 122. Jio said that disclosure of this recent arrest would have influenced his decision since it was so recent it was relevant to moral character. ER 521; RT 71. Also, if Abpikar had been placed on probation he would have been ineligible to naturalize until the probation was over. Id.

Jio gave Abpikar a form N-14, a form used to request further documentation from the applicant. The N-14 requested further documentation from Abpikar regarding other criminal cases, but did not request any further documents regarding the Oklahoma convictions. ER

12

541; RT 91.

At the conclusion of the interview, Jio continued the application process in order to receive the further documentation he requested in the N-14. ER 544-545; RT 94-95. Jio did not have a record of what further documents he requested from Abpikar on the N-14. ER 546; RT 96. Jio testified that if CIS did not receive the further information requested in the N-14, then the application would be denied for "lack of prosecution." ER 548-549; RT 98-99. However, after the interview Jio does not follow up to see if the information requested in the N-14 is received. That process is taken over by another officer. ER 550; RT 100.

Abpikar's citizenship application was denied in August, 2006. Jio was not involved in the denial.

In 2007 another agent asked Jio if he had adjudicated Abpikar's citizenship application and whether he had discussed the Oklahoma convictions with Abpikar. Jio said this was the first time he learned of the Oklahoma case. ER 543; RT 93.

Jio reviewed a prior citizenship application Abpikar submitted in 1990. On that form Abpikar stated his marital status was "divorced" and

13

said his ex-wife was Ronnette Mayuiers. ER 526; RT 76. Abpikar's alien registration, or green, card indicated that he had obtained his green card through marriage to a United States citizen. ER 527-528; RT 77-78.

## B.     Procedural History

In an indictment filed August 20, 2008, in the United States District Court for the Northern District of California, appellant Hassan Abpikar was charged with three counts of making a false statement under oath relating to naturalization under § 1015(a). ER 710-711. On November 24, 2009 a Superseding Indictment was filed charging two counts of false statements under § 1015(a), two counts of failing to disclose material information to a government agency under § 1001(a)(1), and two counts of perjury under § 1621.[5] ER 699-706.

Abpikar was represented by several appointed counsel. He also exercised his right to represent himself for some period. Abpikar filed numerous pro se motions on his own behalf, both while he was

---

[5]

We abbreviate record references as follows: Excerpts of Record "ER"; the Clerk's Record "CR"; and reporters' transcripts as "RT." All RT references are to the reporter's transcript of October 28, 2010 unless otherwise noted.

representing himself and while he was represented by counsel. He was eventually represented by David Paulson at trial.

Trial commenced on October 28, 2010. Appellant testified on his own behalf. ER 128. After asking the court three questions, the jury returned guilty verdicts on all charges on November 2, 2010. ER 80-92. On April 11, 2011, the district court sentenced appellant to a term of 36 months in custody, three years of supervised release, a $5,000 fine, and a $600 special assessment. ER 4-11.

Appellant filed a timely notice of appeal. ER 1.

///

///

///

15

## LAW AND ARGUMENT

## I.

**THE JUDGMENT OF CONVICTION ON COUNTS ONE AND THREE FOR FAILURE TO DISCLOSE ALL PRIOR CRIMINAL HISTORY ON THE FORM N-400 MUST BE REVERSED AS CONSTITUTIONALLY INSUFFICIENT UNDER <u>BRONSTON</u> BECAUSE THE FORM DOES NOT REQUIRE DISCLOSURE OF ALL PRIOR CRIMINAL HISTORY, AND ALL OF APPELLANT'S ANSWERS ABOUT HIS CRIMINAL HISTORY WERE TRUE**

The judgment of conviction on Counts One (for false statement to government agency) and Three (for perjury) must be reversed under <u>Bronston v. United States</u>, 409 U.S. 352, 34 L. Ed. 2d 568, 93 S. Ct. 595 (1973). These charges are based on Abpikar's alleged failure to disclose all of his criminal history on the form, but the evidence clearly shows that the form did not ask for all of his criminal history, and his answers to the criminal history questions on the form were all accurate.

**A.    Standard of Review**

This court reviews a challenge to the sufficiency of the evidence for plain error when no motion to judgment of acquittal was made in the district court. <u>United States v. Stauffer</u>, 922 F.2d 508, 511 (9th Cir. 1990).

16

Plain error is "(1) error, (2) that is plain, and (3) that affect[s] substantial rights . . . . If all three conditions are met, [the court] may then exercise [its] discretion to notice a forfeited error, but only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." United States v. Cotton, 535 U.S. 625, 631, 122 S. Ct. 1781, 152 L. Ed.2d 860 (2002) (internal citations and quotations marks omitted); United States v. Doss, 630 F.3d 1181, 1193 (9th Cir. 2011), as amended on reh'g in part (Mar. 15, 2011).

In reviewing a claim of insufficiency of the evidence, this court must assess the evidence "in the light most favorable to the prosecution," determining whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Orozco-Santillan, 903 F.2d 1262, 1264 (9th Cir. 1990) (quoting Jackson v. Virginia, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979)) (emphasis in original). The court "must respect the province of the jury to ascertain the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts, by assuming that the jury resolved all such matters in a manner which supports the verdict." Id.

17

## B.    Applicable Law

Under <u>Bronston</u>, a defendant cannot be convicted of perjury ffor a statement that was literally true under the only possible interpretation. The defendant in <u>Bronston</u> was asked whether he had any Swiss bank accounts, and he answered "The company had an account there for about six months, in Zurich." <u>Id</u>. at 354. The statement was indisputably true, as far as it went, but he neglected to mention that he also had a personal Swiss bank account. <u>Id</u>. Bronston was prosecuted for perjury, but the Supreme Court reversed his conviction because he had not made a false statement. <u>Id</u>. at 362.

<u>Bronston</u>'s rule is limited to cases in which the statement is indisputably true, though misleading because it was unresponsive to the question asked. Different rules govern statements that are ambiguous, in which the statement may be true according to one interpretation and false according to another. This circuit distinguishes between answers that contain some ambiguity and those that are fundamentally ambiguous. <u>United States v. McKenna</u>, 327 F.3d 830, 840-41 (9th Cir.), cert. denied, 540 U.S. 941 (2003). A fundamentally ambiguous statement cannot, as a matter of law, support a perjury conviction.

18

United States v. Culliton, 328 F.3d 1074, 1078 (9th Cir. 2003) (per curiam), cert. denied, 540 U.S. 1111, 157 L. Ed. 2d 900, 124 S. Ct. 1087 (2004). A statement is not fundamentally ambiguous simply because the questioner and respondent could possibly have had different interpretations. Id. at 1079. "A question is fundamentally ambiguous when men of ordinary intelligence cannot arrive at a mutual understanding of its meaning." Id. at 1078 (internal quotation marks omitted).

On the other hand, the existence of "some ambiguity" in a falsely answered question is generally not inconsistent with a conviction for perjury. McKenna, 327 F.3d at 841. The context of the question and other extrinsic evidence relevant to the defendant's understanding of the question may allow the finder of fact to conclude that the defendant understood the question as the government did and, so understanding, answered falsely. Culliton, 328 F.3d at 1079. Ordinarily, the finder of fact decides which of the plausible interpretations of an ambiguous question the defendant apprehended and responded to. Id. at 1078; United States v. Matthews, 589 F.2d 442, 445 (9th Cir. 1978).

///

19

**C.    The Insufficiency of the Evidence on Counts One and Three Is Plain Because The Verdict for Making False Statements Is Based On Responses By Appellant About His Criminal History That Were Unambiguously True**

The jury found Abpikar guilty on Counts One and Three based on his failure to "disclose" his Oklahoma criminal history in response to Question 17 in Part 10.D of the N-400.   Unfortunately for the government, Abpikar was never specifically asked to "disclose" every charge ever made against him.

Rather, the form directed Abpikar to answer specific questions, which he did, and all of his answers were true.   The form N-400 asked in Question 16 whether Abpikar had ever been arrested, and he checked the box that said "yes."   Question 17 asked if he had ever been charged with a crime, and he said "yes."  Question 18 asked whether he had ever been convicted of a crime, and he said "yes."  Each of these answers was absolutely, unambiguously true.   The form also asked if he had ever received a suspended sentence, been placed on probation, or been to jail. He answered yes to each of these questions as well.

The government's quarrel with Abpikar, and the essence of the charges against him, had to do with his response to the next instruction

20

on the form N-400:

> If you answered 'Yes' to any of questions 15 through 21, complete the following table. If you need more space, use a separate sheet of paper to give the same information.

Abpikar completed the table. He filled in all of the required information for several arrests and convictions. The charges and convictions he listed in the table did not include any reference to his Oklahoma criminal history. The space on the table provided was filled in completely, and he did not attach a separate sheet.

Abpikar now stands convicted of several federal felony offense for failing to do something that the form did not specifically direct him to do.

If the federal government is going to require applicants for citizenship to list each and every arrest, charge and conviction they have ever suffered, then the citizenship application must include language that directs applicants to do just that: list each and every arrest, charge and conviction. The form N-400 that Abpikar filled out did not tell him to list each and every arrest, charge and conviction. ER 274. Rather than using plain language to the effect of "list each and every arrest,

charge and conviction," the form Abpikar filled out says "complete the following table. If you need more space," attach a separate sheet. ER 274.

Abpikar did exactly what the form required. ER 274. He disclosed that he had been arrested, that he had been charged, that he had been convicted, that he had received either a suspended sentence or probation, and that he had been to jail. ER 274. He was only "asked" to fill out a table on the form, which he did with accurate and true information.

The rule of <u>Bronston</u> applies because, as in <u>Bronston</u>, Abpikar's statements on the form N-400 about his criminal history were all "indisputably true, though misleading because . . . [arguably] unresponsive to the question asked."

Abpikar's responses were not ambiguous. When asked whether he had been arrested he answered "yes." When asked whether he had ever been charged he said "yes." When asked whether he had ever been convicted he answered "yes." All of these answers were indisputably true. The alleged failure to disclose relevant criminal history was therefore not a failure to disclose because the form did not request all of

22

his criminal history.

Moreover, Jio testified that he did not verbally ask Abpikar whether he had ever been charged with committing a crime, as set forth in Question 17, because when Jio saw that Abpikar's answer to the previous question was that he had previously been arrested, rather than continue through each of the following questions on the N-400, Jio went straight to Abpikar's rap sheet, where he inexplicably failed to notice the Oklahoma charge and conviction that Abpikar was later charged with failing to disclose.

## D.    The Error Was Prejudicial Because It Affected His Substantial Rights, and This Court Should Exercise Its Discretion Because It Seriously Affects the Fairness of the Proceedings

This Court should reverse because the error was prejudicial and seriously "affect[s] the fairness, integrity, [and] public reputation of judicial proceedings."

It would be a miscarriage of justice to allow Abpikar's convictions for failing to disclose pertinent criminal history to stand when he disclosed that he had been arrested, charged and convicted, and the officer who reviewed that form testified that once he saw those

affirmative answers, he then reviewed Abpikar's rap sheet, which contained the allegedly omitted Oklahoma criminal history!

The evidence on Counts One and Three was clearly and constitutionally insufficient. Abpikar should have been acquitted on Counts One and Three--he was convicted of making false statements that were not false.  Abpikar's right to be convicted on only constitutionally sufficient evidence is a substantial right under the Due Process Clause.  And the error seriously affects the fairness, integrity and reputation of proceedings.  This court should reverse the judgment of conviction on Counts One and Three and acquit Abpikar of those charges.

## II.

**THE JUDGMENT OF CONVICTION ON COUNTS FOUR AND SIX FOR FAILURE TO DISCLOSE HIS ARREST AFTER HE FILLED OUT THE FORM AND BEFORE THE INTERVIEW SHOULD BE REVERSED FOR PLAIN ERROR BECAUSE THERE WAS NO EVIDENCE ADMITTED AT TRIAL TO SHOW THAT ABPIKAR WAS EVER ASKED IF HE HAD BEEN ARRESTED BETWEEN THE TIME HE FILLED OUT THE FORM AND THE INTERVIEW**

### A.    Standard of Review

This court reviews a challenge to the sufficiency of the evidence

for plain error when no motion to judgment of acquittal was made in the district court. <u>United States v. Stauffer</u>, 922 F.2d 508, 511 (9th Cir. 1990). As argued below, trial counsel provided Abpikar with ineffective assistance by failing to move for a judgment of acquittal under Rule 29 based on insufficient evidence. However, this court need not reach the ineffective assistance claim here because the error was so obvious and prejudicial that the court should reverse for plain error.

**B.   The Insufficiency of the Evidence On Counts Four and Six Is Plain Because Abpikar Was Convicted Of Perjury For Failing To Disclose That He Was Arrested Between The Time He Completed The Form N-400 But Before The Citizenship Interview When The Form Did Not Ask About Subsequent Arrests And Jio Did Not Testify That He Ever Asked Abpikar To Disclose Subsequent Arrests During the Interview**

Abpikar signed the N-400 on September 19, 2004. His interview on the naturalization application did not take place until eight months later, on May 18, 2005. Just four days before that interview, Abpikar was arrested by a San Jose Police Department officer for burglary and related charges. ER 519, 572

Abpikar's failure to disclose his arrest of May 14, 2005 formed the factual basis for the jury's verdicts on Counts Four and Six. ER 83-84, 86-87.

Abpikar should have been acquitted on these counts. The citizenship application does not require the disclosure of arrests that occur after it is filled out and submitted. And Jio never testified that he asked about intervening arrests at the interview, or even that it was his practice to ask about intervening arrests. The evidence was therefore constitutionally insufficient to sustain Abpikar's convictions on Counts Four and Six because the jury verdict rested on the factual finding that he failed to disclose the intervening arrest by the San Jose Police Department.

**C. The Error Is Plain and Prejudicial Because It Affected Abpikar's Substantial Rights, and This Court Should Exercise Its Discretion Because The Error Seriously Affects the Fairness of the Proceedings**

On these facts, the error is plain. Abpikar was convicted on insufficient evidence on Counts Four and Six. He should have been found not guilty. As argued above, in section I.D., a conviction based on insufficient evidence affects substantial rights and also seriously affects the fairness of the judicial proceedings. Accordingly, this Court should exercise its discretion and acquit Abpikar on Counts Four and Six.

26

## III.

**THE JUDGMENT OF CONVICTION ON COUNTS ONE, TWO AND THREE SHOULD BE REVERSED AS TIME-BARRED BECAUSE THE EVIDENCE AT TRIAL SHOWS THESE OFFENSES WERE NOT CHARGED UNTIL MORE THAN FIVE YEARS AFTER THE OFFENSES HAD BEEN COMMITTED**

**A.    Standard of Review**

Abpikar filed a motion to dismiss on statute of limitations grounds, on February 22, 2010, ER 669, which was denied by the court on May 24, 2010. CR 132.  Abpikar filed another motion to dismiss on statute of limitations grounds October 13, 2010, ER 640, which was denied by written order on November 2, 2010.  ER 120.  Review of the application of a statute of limitations is therefore de novo. United States v. Workinger, 90 F.3d 1409, 1412 (9th Cir. 1996).

**B.    Counts One Through Three Were Time-Barred Because They Were Committed On September 19, 2004 But Not Charged Until November 24, 2009**

This Court should reverse the judgment of conviction, and enter judgments of acquittal, on Counts One through Three of the Superseding Indictment because they were not filed until after the statute of

limitations expired.  The applicable statute of limitations is five years.[6] The Superseding Indictment was returned on November 24, 2009.  ER 699.  Counts One through Three of the Superseding Indictment were alleged to have occurred on "November 29, 2004," a date which, if true, would have made them timely, though just by a mere five days.

The evidence at trial, however, showed that the offenses were in fact committed September 19, 2004, more than two months earlier than alleged in the indictment, and more than five years before the Superseding Indictment was filed.  The N-400 was signed by Abpikar under penalty of perjury on September 19, 2004.  ER 276.  His declaration on the form certified the information on the N-400 as true. Page 1 of the form is stamped "11/29/2004."  ER 267.  Jio testified that this stamp was not done by his office but by "the office that receives these applications."  ER 501.  That was the full extent of the evidence introduced on the issue.

---

[6] "Except as otherwise expressly provided for by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed."  18 U.S.C. § 3282.

28

This evidence is constitutionally insufficient to prove beyond a reasonable doubt that the offenses charged in Counts One through Three were "committed" on November 29, 2004, rather than on September 19, 2004, the date Abpikar signed the application under penalty of perjury. A statute of limitations begins to run on the date an offense is complete. A crime is complete when each element of the offense has been committed. The offenses alleged under sections 1001, 1015 and 1621 were each complete on September 19, 2004. None of these offenses requires as an element that the government have actually reviewed or rely on the information submitted, as long as it is material. None of the offenses are continuing offenses. See United States v. Dunne, 348 F.3d 1158 (9th Cir. 2003)(section 1001 is not a continuing offense).

Thus, the offenses alleged in Counts One through Three, if they were committed at all, were committed on September 19, 2004, when Abpikar signed the naturalization application under penalty of perjury. The Superseding Indictment charging those offense was not returned until November 24, 2009, more than two months beyond the five years limitations period. The latest these offenses could have been charged was September 19, 2009. Accordingly, Counts One through Three were

29

time-barred, and Abpikar should have been acquitted of them, unless another exception applies. The government may argue that the original Indictment was timely and tolled the charges in filed in the Superseding Indictment.

**C.    The Original Indictment Did Not Toll the Charges in the Superseding Indictment Because The Superseding Indictment Added New Charges and Impermissibly Broadened The Existing Charges In The Original Indictment.**

    **1.    Applicable Law On Tolling**

Generally, the statute of limitations is tolled by the return of an indictment with respect to the charges contained in that indictment. United States v. Pacheco, 912 F.2d 297, 305 (9th Cir. 1990) (citing United States v. Italiano, 894 F.2d 1280, 1282 (11th Cir. 1990). If a superseding indictment is returned while a previous indictment is pending, the tolling continues as to those charges which are the same in both indictments. Id. Where the counts of an original indictment are duplicated verbatim into a superseding indictment, the statute on those counts is tolled, even if additional counts that are subject to no limitations objection are added. Pacheco, 912 F.2d at 305.

However, if the charges in a superseding indictment "broaden[]

30

or substantially amend []" the charges in an earlier indictment, the statute of limitations is <u>not</u> tolled as to such broadened or amended charges. <u>United State v. Sears Roebuck & Company, Inc.</u>, 785 F.2d 777, 778 (9th Cir. 1986); <u>United States v. Grady</u>, 544 F.2d 598, 602 (2nd Cir. 1976). Moreover, statutes of limitations in criminal cases are "'to be liberally interpreted in favor of repose.'" <u>Toussie v. United States</u>, 397 U.S. 112, 115 (1970) (<u>citing</u> <u>United States v. Habig</u>, 390 U.S. 222, 227 (1968)).

### 2.    Procedural Background

The original indictment alleged three counts. All three alleged violations of section 1015 (False Statement Under Oath). Count One was alleged to have occurred on November 29, 2004 and was based solely on Abpikar's alleged failure to "disclose . . . his 1980 felony conviction in the State of Oklahoma for making a bomb threat." ER 710. Count Two charged another section 1015 violation on November 29, 2004. ER 711. The basis for this offense was his failure to provide a correct address. Count Three of the original indictment was alleged to have occurred on May 18, 2005. ER 711.

The Superseding Indictment added new charges and

impermissibly broadened an existing charge.  Count One now charged a violation of section 1001 on November 29, 2004, rather than section 1015, and instead of just one failure to disclose, the new charge alleged seven failures to disclose on the N-400, only one of which was the failure to disclose the Oklahoma conviction for telephoning a bomb threat charged in Count One of the original indictment.  ER 699-701. The new Count Two was charged under the same statute as the original Count Two, section 1015, but this time it was broadened so that instead of just one failure to disclose there were at least five failures to disclose alleged, only one of which was the same as the original allegation that he had provided a false address. ER 701-702.  Finally, the new Count Three in the Superseding Indictment alleged a perjury charge on November 29, 2004. ER 702.

### 3.    The New Charges Under Sections 1001 and 1621 Were Not Tolled by the Original Indictment Because They Were Not Charged In the Original Indictment

Under controlling law, the filing of the original indictment did not toll the statute of limitations for the newly charged statutory violations under section 1001 and 1621.  <u>United States v. Wilsey</u>, 4587 F.2d 11, 12 (9th Cir. 1972), <u>cert. denied</u>, 479 U.S. 988 (1986)("The filing

32

of an indictment results in a tolling of the statute <u>upon the charges embraced</u>.") (emphasis added).

Here, the new charges substantially broadened the original charges. New statutes were charged, and many new factual predicates were alleged for violations that had previously been charged based on a single factual predicate.

In <u>Wilsey</u>, the defendant was first charged with seven counts of filing false tax returns and submitting false statements. Superseding indictments filed after the limitations period expired "embrac[ed] in seven counts <u>the same offenses previously charged</u>," with a clerical correction and amplification of the statutory language. <u>Id.</u> at 12 (emphasis added). This Court found the amendments timely, even though the superseding indictments were filed beyond the time provided by the statute of limitations, because the "filing of an indictment results in a tolling of the statute upon the charges embraced," and the two indictments charged the "same offenses." <u>Id.</u>

The government may contend that notice is the policy behind the rule allowing untimely amendments which do not broaden or substantially amend timely-filed charges. But no decision has ever

33

allowed time-barred charges simply because earlier charges were based on the same underlying transaction.  See United States v. Charnay, 537 F.2d 341, 353-354 (9th Cir. 1976)(untimely superseding indictment affirmed where it only deleted charges).

The only decision in which this Court upheld a superseding indictment containing a new statutory charge, one not contained in the original indictment, is Sears, 785 F.2d 777.  In Sears the government filed a timely indictment charging a conspiracy and twelve violations of 18 U.S.C. section 542, a false statements statute.  A superseding indictment filed after the limitations period had run charged the conspiracy and twelve false statement counts under 18 U.S.C. section 1001, a different false statements statute.  This Court found that the superseding indictment did not broaden or substantially amend the original charges because "all the elements of a section 1001 prosecution are included in a section 542 charge."  Id. at 779 (emphasis added).  Accordingly, although alleged under a different statute, the new offenses were nevertheless the same as the former offenses because each had the same elements.

Importantly, in Sears this Court cited United States v. Rose, 570

34

F.2d 1358 (9th Cir. 1978) in holding the amendment of the charges proper. In Rose, this Court employed an analysis under Blockburger v. United States, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932),and concluded that sections 542 and 1001 were the "same offense" for double jeopardy purposes, and thus could not be separately punished. Relying on that analysis in Sears, this Court found that the superseding indictment did not amend or substantially broaden the charges because, as Rose held, the section 1001 offenses were the same as the section 542 offenses within the meaning of Blockburger, so they were not new charges. Therefore, no substantial amendment occurred because the same offenses were previously charged within the limitations period.

The same cannot be said of the newly charged violations under sections 1001 and 1621 in the instant case, each of which, under Blockburger, requires the proof of a fact not necessary to the other offense. The elements of the three offenses are substantially different. They are not the "same offense previously charged" within the meaning of Wilsey, 458 F.2d at 12.

Because criminal statutes of limitations are "'to be liberally interpreted in favor of repose,'" Toussie, 397 U.S. at 115, a holding

35

allowing untimely new offenses charged under different codes would be a radical departure from existing law, and one not supported by the statute creating the limitations period.

Moreover, the decisions of the other circuits are in agreement that the identity of the charges is the focus of the analysis in determining whether an untimely amendment broadens or substantially amends timely-filed charges. See, e.g., United States v. Grady, 544 F. 2d 598 (2d Cir. 1976)(changes narrowed charges). None have allowed an otherwise time-barred amendment adding a new statutory charge with different offense elements. See United States v. Zvi, 168 F.3d 49, 54-55 (2d Cir. 1999)(reversing conviction where defendants informed by government that it intended to prosecute them for money laundering because "the sixteen counts of money laundering added by the superseding indictments required the defendants to defend against additional charges that alleged violations of a different statute, contained different elements, relied on different evidence, and exposed the defendants to a potentially much greater sentence.")

///

///

36

### 4.    The Newly Alleged Violation of Section 1015 in Count Two Impermissibly Broadened the Original Charge So It Should Not Relate Back for Tolling Purposes

The new Count Two substantially broadened the original charge. It charged and offense under the same statute, section 1015, as the original Count Two, but the new charge was substantially broadened. Instead of alleging just a failure to disclose one material fact, the new count charged Abpikar with failing to disclose five different material facts, only one of which was the same as the original allegation. The original count alleged that Abpikar provided a false address. The new count alleged, in addition, that he failed to disclose prior arrests, failed to disclose prior charges, failed to disclose prior convictions, failed to disclose a prior sentence, and lied about having been married.

Given the substantial discrepancies between the new and old Count Two, the court should find that the original charge did not toll the statute of limitations for the newly charged count two, and was therefore time-barred.

### D.    The Error Was Not Harmless Because Abpikar Was Convicted of Three Counts That Were Time-Barred

There can be no harmless error when someone has been convicted

of an offense that was legally time-barred.  Allowing the judgment of conviction to stand on Counts One, Two and Three would result in a miscarriage of justice.

## IV.

**THE JUDGMENT OF CONVICTION MUST BE REVERSED FOR PLAIN ERROR BECAUSE THE COUNTS WERE MULTIPLICITOUS:  THE REPETITION OF THE SAME FALSEHOODS IN RESPONSE TO THE SAME QUESTION WERE CHARGED AS TWO SEPARATE COUNTS**

### A.    Standard of Review

Generally, the claim that an indictment is multiplicitous is reviewed de novo. United States v. Vargas-Castillo, 329 F.3d 715, 718-19 (9th Cir. 2003).  However, when the issue was not raised below, it is reviewed for plain error.  United States v. Awad, 551 F.3d 930, 937 (9th Cir. 2009).

### B.    Applicable Law

An indictment is multiplicitous when it charges a single offense in multiple counts, producing two penalties for one crime and thus raising double jeopardy questions.[7] Id. However, two counts within an

---

[7]    Abpikar was in fact punished twice.  Although his custodial sentence was not calculated based on multiple offenses, the special

indictment are not multiplicitous if "each separately violated statutory provision requires proof of an additional fact which the other does not." Id.; see United States v. Stearns, 550 F.2d 1167, 1172 (9th Cir. 1977) ("Congress has the power to establish that a single act constitutes more than one offense, at least as long as each offense requires proof of a fact the other does not.").

"[W]here identical false statements, in either oral or written form, are made in response to identical questions, the declarant may be convicted only once." United States v. Olsowy, 836 F.2d 439, 443 (9th Cir. 1988). This court has ruled that the government may not obtain multiple perjury convictions because a defendant repeated the same lie to a grand jury in response to the same question. Gebhard v. United States, 422 F.2d 281 (9th Cir. 1970). This Court has also upheld multiple convictions under section 1001 for submitting separate documents at the same time, United States v. UCO Oil Co., 546 F.2d 833 (9th Cir. 1976), cert. denied, 430 U.S. 966 (1977), and for submitting subsequent documents that summarized earlier documents. United States v.

---

assessment was; a special assessment of $100 was imposed for each of the six counts of conviction.

39

Bennett, 702 F.2d 833 (9th Cir. 1983).

### C.    Counts 1 and 4 are Multiplicitous, as are Counts 2 and 5, and 3 and 6 -- The Judgment of Conviction On One of Each of the Three Sets of Counts Must Be Reversed for Plain Error Because Abpikar Made The Identical Statement In Response To The Same Questions Each Time

Each count of the Superseding Indictment charged the same offense as another count, the only difference being the date alleged.

The date charged in the first three counts was the date the form N-400 was received by CIS.  Abpikar signed and submitted the form N-400 under penalty of perjury in 2004.  The date charged in the last three counts was the date the same document was reviewed, and signed again by Abpikar, during the citizenship interview eight months later. Jio testified that Abpikar  was orally sworn at the beginning of the citizenship interview, then once again required to sign the some form under penalty of perjury at the conclusion of the interview.

The jury could therefor have found that the exact same form N-400 was sworn to by Abpikar three times, once in 2004 and twice in 2005.  Counts Four through Six charged the 2005 swearing of the document but did not specify whether it was the "oral" oath administered by Jio, or the written declaration when Abpikar signed the

form again.[8].

Counts 1 and 4 are the same offense with different dates, as are Counts 2 and 5, and Counts 3 and 6.

This case is legally indistinguishable from Olsowy. In Olsowy, the defendant received a Social Security check, which was endorsed and cashed. 836 F.2d at 440. The defendant later claimed he had never received the check. The same government agent interviewed the defendant twice within a two-week span. The agent asked the defendant during the first interview "whether he had received the check," and during the second interview, the agent stated he believed the defendant had endorsed the check and filed a fraudulent claim. Id. In both instances the defendant denied receiving the check. Id. The defendant was later convicted of, inter alia, two counts of making false statements in violation of section 1001(a)(2). Id. This court reversed the

---

[8]

   The jury sent the court a note asking: "For the charge of perjury, can he perjure himself without signing the declaration? Is the oral oath administered by Officer Jio sufficient?" The court responded to the jury's note that if they found the oral oath "was understood to cover the declaration you find was made, that declaration could constitute perjury, if it was knowingly false and material when made." ER 91-92.

conviction on one of the counts, holding the defendant's identical responses to identical questions on separate occasions, even though both false, allowed for indictment on only one count. Id. at 443.

Similarly, here, Abpikar was asked to sign a declaration at the end of the form N-400 twice, once when he first filled it out, then a second time at the conclusion of the interview with Jio eight months later. He was also asked to take an oral "oath" by Jio at the beginning of the citizenship interivew. The form N-400 was exactly the same on both occasions, and Abpikar's responses on both occasions were exactly the same. There was no testimony that he changed or amended his written responses when he came to the interview. In the language of Olsowy, the "statements" were identical, in response to the identical questions. Thus, the declarant "may be convicted only once." Olsowy, 836 F.2d at 443.

The error here was plain, prejudicial, and affected Abpikar's substantial rights. This court should reverse the judgment of conviction on one of each of the three sets of the multiplicitous counts to maintain the integrity of the judicial process.

**V.**

42

# THE CHARGES SHOULD HAVE BEEN DISMISSED BECAUSE THE TRIAL OF APPELLANT'S CASE WAS DELAYED DUE TO COURT CONGESTION IN VIOLATION OF THE SPEEDY TRIAL ACT

## A.    Standard of Review

This court reviews legal questions regarding the application of the Speedy Trial Act de novo, and factual findings for clear error. <u>United States v. Contreras</u>, 63 F.3d 852, 854-55 (9th Cir. 1995); <u>United States v. Aviles-Alvarez</u>, 868 F.2d 1108, 1111 (9th Cir. 1989).

## B.    Procedural Background

Abpikar was first charged in the district court on August 20, 2008. Trial of the case was continued several times.  Jury selection did not finally begin until October 26, 2010.   The second to last time trial was continued was because of court congestion, which is not a valid reason for an exclusion of time under the Speedy Trial Act.   The judgment of conviction must be reversed on all counts, and the matter remanded to the district court to determine whether the charges should be dismissed with, or without, prejudice.

Appellant repeatedly informed the district court that he objected to the continuances being granted in his case and asked for a speedy

trial.

For several months during the proceedings below, appellant represented himself.  In March, 2010, while acting pro se he filed a motion to dismiss the case on speedy trial grounds.   ER 669.  The district court requested that the government file a report showing what continuances had been granted in the case and calculating how many days remained on the speedy trial clock.  In a memo filed May 27, 2010, the government calculated that 18 days remained on the speedy trial clock.  ER 665.  The court never expressly ruled on appellant's claim that his speedy trial rights had been violated.

At that point, trial was set for August 9, 2010.   The parties appeared for the Pretrial Conference on August 5, 2010.  ER 658.  When the case was called, the following colloquy ensued:

> COURT: Let me start by raising an issue with you of trial date.  I'm currently in trial in a case that's probably going to run the rest of the month.  We have limited time on the speedy trial clock.  So I guess the question is, what do the parties want to do?
>
> AUSA KNIGHT: You Honor, I just spoke with Mr. Paulson [defense counsel] and we are suggesting new dates of having a trial at the end of September, September 27th.  I understand we only have 18 days

44

left on the trial clock.  My office is still providing
discovery to Mr. Paulson.  And we are agreeable to
a date in September.

COURT: What is the defense's position?

ER 658-659.

Defense counsel noted that appellant had an appeal pending in an

immigration case and asked the court to postpone the trial even further.

ER 659-662.  The court noted that the appellate immigration case was

unrelated and did not find that to be a basis to continue the criminal

case.  ER 662.  The court continued the trial to September 27, 2010.  ER

662-663.  At the conclusion of the hearing the court stated that it was

excluding time for "effective preparation."   From the transcript, it

appears the court may have attempted to find that the interests of justice

outweighed the defendant and public right to a speedy trial, but the

transcript does not actually show the court doing so.  ER 663.

A stipulation filed the next day stated that during the previous

day's court appearance, "the Court informed the parties that the trial,

scheduled to begin on August 9, 2010, would be continued due to a

scheduling conflict."  It further stated that a continuance was necessary

for "continuity" and "effective preparation of counsel."   ER 656.

45

On October 26, 2010, on the eve of trial, Abpikar pointed out to the court that it had not ruled on his speedy trial motion. ER 634. The court then stated that it was "denying all the motions here and now." ER 634. The court later issued a written order denying any pending motions. ER 120. The court never expressly ruled on appellant's motion to dismiss for speedy trial violations.

## C.  Applicable Law

The Speedy Trial Act of 1974 (Speedy Trial Act or Act), 18 U.S.C. §§ 3161-3174, requires the dismissal of the indictment against any defendant who is not brought to trial within seventy days. 18 U.S.C. §§ 3161(c)(1), 3162(a)(2). The Speedy Trial Act contains narrow, automatic exclusions from the strict time limits for necessary pretrial proceedings, treatment of a defendant, trials on other charges, interlocutory appeals, and unavailability of defendants or essential witnesses, among other reasons. 18 U.S.C. § 3161(h)(1)-(7). Also, the Act permits the trial court to exclude time for continuances when the "ends of justice" outweigh the interest of the public and defendant in a speedy trial. 18 U.S.C. § 3161(h)(8)(A). These factual findings must be set forth in the record. United States v. Nance, 666 F.2d 353 (9th Cir.

46

1982)(J. Kennedy).

However, the Speedy Trial Act prohibits the granting of an ends of justice continuance "because of general congestion of the court's calendar." 18 U.S.C. § 3161(h)(8)(C). This statutory prohibition recognizes that the Speedy Trial Act is intended to eliminate delays caused by crowded dockets. <u>Nance</u>, 666 F.2d at 357.

**D.    The Judgment of Conviction Should Be Reversed, and The Charges Dismissed, Because The Continuance of the August 9, 2010 Trial Date Was Clearly Based On Court Congestion And Resulted In A Violation of the Speedy Trial Act**

The only reasonable reading of the record below is that on August 5, 2010, the trial of Abpikar's case was continued, and time excluded under the Speedy Trial Act, because the court was unavailable to try the case as it was involved in another trial. This was a clear violation of the Speedy Trial Act's prohibition against excluding time for "court congestion."

When the parties appeared on August 5, 2010 trial was supposed to start four days later. But then court informed the parties that the was unavailable because it was already engage in another trial for the remainder of August. The parties agreed to continue the trial to late

47

September. Defense counsel requested even longer because of an appeal in an immigration case that appeared irrelevant to the proceedings. When the parties submitted a stipulated order purporting to memorialize the Speedy Trial exclusion, the order stated that the trial would be continued "due to a scheduling conflict."

The exclusion of time starting August 5, 2010 was a clear violation of the Speedy Trial Act's prohibition against excluding time because of court congestion. The Act expressly disallows continuances based on court congestion. The fact that the Honorable Judge Whyte was in trial in another case was not a grounds to continue the trial of Abpikar's case (particularly given that the charges had been pending for approximately two years). In fact, it legally could not be a ground for continuing Abpikar's trial. The Act mandates that the case be sent to another judge in the district for trial.

The record of what the court stated at the end of the hearing on August 5, 2010 is largely incomprehensible, though it does appear that the court was attempting to articulate an "ends of justice" time exclusion under the Act. The stipulated order filed later purported to state that the continuance was needed for "continuity of counsel." However, no facts

were articulated, either at the hearing or in the stipulation, to indicate that Mr. Paulson was in any way unavailable. The stipulation also purported to state that a continuance of the trial was needed for the "effective preparation" of defense counsel. But again, no facts demonstrating, or even suggesting, that Mr. Paulson needed the time to prepare were ever articulated during the court appearance, or set forth in the stipulation.

Under the circumstances, it is clear that the reason the trial was continued was because the court was already in trial and therefore unavailable to try Abpikar's case.

The violation here was particularly egregious (and pertinent to the issue of whether the dismissal should be with or without prejudice) because appellant had already filed a motion informing the court that he thought his speedy trial rights had been violated, and the government had filed a memo detailing exactly what time exclusions had been made and concluding that only 18 days remained on the speedy trial clock. Under those circumstances, the court should have been more cognizant of the need to protect Abpikar's speedy trial rights. Notwithstanding the foregoing, a continuance and time exclusion of well over 18 days was

49

ordered on August 5, 2010.

The government's position below was that as of August 5, 2010, there were 18 days remaining on the Speedy Trial clock. Accordingly, Abpikar should have been brought to trial before August 23, 2010. He was not, in fact, even brought back to court by that date, and his trial did not commence (it was continued yet again in September) until late October. The next calling of the case was on September 16, 2010, when the case was, yet again, set for Pretrial Conference and the trial date was, yet again, continued. ER 646. At this point another 42 days had elapsed. The time between August 5, 2010 and September 16, 2010 should not have been excluded.

The judgment of conviction must be reversed. The district court should be instructed to weigh the relevant factors and determine, in the first instance, whether the dismissal of the Superseding Indictment should be with, or without, prejudice.

///

///

///

50

# VI.

## THE JUDGMENT MUST BE REVERSED BECAUSE ABPIKAR RECEIVED CONSTITUTIONALLY INEFFECTIVE ASSISTANCE OF COUNSEL WHEN TRIAL COUNSEL FAILED TO MAKE A MOTION FOR JUDGMENT OF ACQUITTAL OR A MOTION FOR NEW TRIAL BASED ON ANY OF THE ISSUES SET FORTH ABOVE IN SECTIONS I THROUGH V

### A.    Standard of Review

This court's review is de novo on the issue of whether a defendant received ineffective assistance of counsel. Heishman v. Ayers, 621 F.3d 1030, 1036 (9th Cir. 2010).

### B.    Applicable Law

A criminal defendant has a federal constitutional right to the effective assistance of counsel.  U.S. Const., Amend. VI.   But for counsel's failure to raise any of the issues raised above in section I through IV, and expressly incorporated herein, there is a reasonable possibility that a more favorable result would have been obtained. Strickland v. Washington, 466 U.S. 668 (1984).

As a general rule, this Court does not review ineffective assistance of counsel claims on direct appeal. United States v. Jeronimo, 398 F.3d 1149, 1155 (9th Cir. 2005). The rationale for that rule is that

51

ineffectiveness of counsel claims usually cannot be advanced without the development of facts outside the original record. Stated another way, a challenge to effectiveness of counsel by way of a habeas corpus proceeding is preferable as it permits the defendant to develop a record as to what counsel did, why it was done, and what, if any, prejudice resulted.  United States v. Benford, 574 F.3d 1228 (9th Cir. 2009).

However, the court has recognized exceptions to this general rule. The court has permitted ineffective assistance claims to be reviewed on direct appeal in cases "(1) where the record on appeal is sufficiently developed to permit determination of the issue, or (2) where the legal representation is so inadequate that it obviously denies a defendant his Sixth Amendment right to counsel." Id.

**C.    The Court Can Address The Claim Of Counsel's Effectiveness On Direct Appeal Because The Record is Sufficient and There Could Be No Valid Tactical Reason Not To Make A Motion For Judgment of Acquittal Based on the Evidence Introduced At Trial**

Here, this Court can decide the ineffective assistance of counsel issue raised both because the record is sufficiently developed, and because the legal representation was so inadequate that it obviously denied Abpikar the effective assistance of counsel under the Sixth

52

Amendment.

Given the record on appeal, there simply could not be a satisfactory tactical explanation for the failure to make a motion for judgment of acquittal under Rule 29, or alternatively for a new trial under Rule 33.

Normally a defendant must affirmatively show that the omissions of defense counsel cannot be explained on the basis of any knowledgeable choice of tactics. If this court agrees that any of the claims set forth in the sections above are meritorious, there could be no valid tactical reason for not bringing them to the attention of the district court. An experienced defense counsel, zealously advocating for his client, would have made a motion for judgment of acquittal and/or a motion for new trial. In fact, there can be no valid tactical reason not to bring a motion for judgment of acquittal or for a new trial. The only valid reason not to make such motions would be if there were no arguable, but only frivolous, grounds. If arguable grounds exist, the motion should be made. The worst that could happen is that the court would deny the motion, in which case the issues would be preserved for appeal.

53

The only conceivable tactical or strategic reasons not to file a motion for judgment of acquittal or new trial would be because counsel was concerned the motions would anger either the court or prosecution, and result in a harsher sentence. But such considerations cannot be recognized as a legally valid tactical reason not to file arguable motion. For Sixth Amendment purposes, it should not be presumed that judges or prosecutors engage in such behavior. That presumption is borne out by the proceedings below: although Judge Whyte departed upwardly from the Guidelines at sentencing, he was careful to explain that his reasons for doing so had nothing to do with Abpikar seeking to vindicate his rights by the filing of motions and asserting his right to a trial. ER 65-67.

The majority of ineffective assistance claims require the defendant to produce evidence as to what counsel was thinking when they made a choice. Counsel enjoys a presumption that they will not be second-guessed for the strategic decisions made during the course of litigation. But there is a limited class of cases where it is obvious that there is no valid tactical reason. Although this Court's review is deferential, such deference should not be an abdication. Otherwise, the constitutional

54

right to the effective assistance of counsel would be reduced to form without substance. There was no valid tactical reason not to file either a motion for judgment of acquittal or a motion for new trial in this case. Trial counsel should have litigated the issues raised herein, and his failure to do so resulted in constitutionally inadequate representation. The judgment of conviction on all counts should therefore be reversed.

## CONCLUSION

For the foregoing reasons, this Court should reverse the judgment of conviction. It should enter a judgment of acquittal on Counts One, Two, Three, Four and Six for the reasons set forth above in section I, II, III and IV. Alternatively, it should reverse all the counts for the speedy trial violation as argued in section V, and remand to the district court to determine whether the dismissal of the indictment should be with or without prejudice. Finally, the court should reverse the judgment for the reasons given in section VI.

DATED: November 21, 2013

/S/Erik Babcock
ERIK BABCOCK
Attorney for Appellant
HASSAN ABPIKAR

55

## STATEMENT OF RELATED CASES

Pursuant to Circuit Rule 28-2.6, Counsel for Appellant is not aware of any case that is related to this case within the meaning of Circuit Rule 28-2.6.

DATED: November 21, 2013

/S/Erik Babcock

ERIK BABCOCK

Attorney for Appellant

## BRIEF FORMAT CERTIFICATE OF COMPLIANCE

I, Erik Babcock, certify:

1. This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure, Rule 32(a)(7)(B) because this brief contains 12,245 words, excluding the parts of the brief exempted by Fed. R. App. P. 2(a)(7)(B)(iii); and

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure, Rule 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure, Rule 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using WordPerfect, version 9.0 in 14 point Times New Roman.

DATED: November 21, 2013

/S/Erik Babcock
_____ERIK BABCOCK
Attorney for Appellant

57

## CERTIFICATE OF SERVICE

I hereby certify that on November 21, 2013, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the appellate CM/ECF filing system. I certify that all participants in the case are registered CM/ECF users will be served by the appellate CM/ECF system.

DATED: November 21, 2013

/S/Erik Babcock

ERIK BABCOCK
Attorney for Appellant

58