No. 11-10192

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

　　Plaintiff-Appellee,

　　　　v.

HASSAN ABPIKAR,

　　Defendant-Appellant.

_____

**BRIEF FOR THE UNITED STATES AS APPELLEE**
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
NO. 08-CR-0560-RMW
_____

　　　　　　　　　　　　　　　**MELINDA HAAG**
　　　　　　　　　　　　　　　United States Attorney

　　　　　　　　　　　　　　　**BARBARA J. VALLIERE**
　　　　　　　　　　　　　　　Chief, Appellate Division

**SUSAN F. KNIGHT**　　　　　　　**LAURIE KLOSTER GRAY**
**DANIEL R. KALEBA**　　　　　　　Assistant United States Attorneys
Assistant United States Attorneys　450 Golden Gate Ave., 11th Floor
150 Almaden Blvd., Suite 900　　　San Francisco, CA 94102
San Jose, CA 95113　　　　　　　　(415) 436-7200
(408) 535-5061

　　　　　　　　　　　　　　　**Attorneys for Plaintiff-Appellee**
January 28, 2014　　　　　　　　　**UNITED STATES OF AMERICA**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... iv

JURISDICTION, TIMELINESS, AND BAIL STATUS ......................................... 1

ISSUES PRESENTED .................................................................... 2

STATEMENT OF THE CASE ............................................................... 3

STATEMENT OF THE FACTS ............................................................. 4

    A.    Defendant Submitted His Application To The Department Of Homeland Security Under Penalty Of Perjury ..................................... 4

    B.    Defendant Is Interviewed Under Penalty Of Perjury ......................... 6

        1.    Defendant provides his marital history ....................................... 8

        2.    Defendant lists a resident address ............................................. 8

        3.    Defendant details his criminal history ....................................... 9

    C.    Defendant Provides False and Misleading Answers .......................... 10

        1.    Defendant's complete criminal history ..................................... 10

        2.    Defendant's true marital history .............................................. 11

        3.    Defendant lists a false resident address ................................... 11

    D.    Defendant Testifies At Trial ..................................................... 12

    E.    The Jury's Verdict ................................................................. 14

        1.    The jury finds defendant guilty of violating Section 1001 ....... 14

        2.    The jury finds defendant guilty of violating Section 1015(a) .. 15

        3.    The jury finds defendant guilty of violating Section 1621 ....... 16

SUMMARY OF ARGUMENT ............................................................16

ARGUMENT ....................................................................................19

    I.     SUFFICENT EVIDENCE SUPPORTS DEFENDANT'S
          CONVICTIONS ON THE CHALLENGED COUNTS ....................19

        A.    Standard Of Review ......................................................19

        B.    The Evidence Supports Defendant's Convictions For
              Failing To Disclose In His Sworn Application That
              He Had Previously Been Charged In State Court With
              Telephoning A Bomb Threat ......................................20

        C.    The Evidence Supports Defendant's Convictions For
              Failing To Disclose At His Sworn Interview That
              He Had Been Arrested On Criminal Charges Four Days
              Earlier ..........................................................................25

    II.    THE GOVERNMENT TIMELY FILED THE ORIGINAL
          INDICTMENT AND THE SUPERSEDING INDICTMENT ..........28

        A.    Standard Of Review ......................................................28

        B.    Background ......................................................................28

              1.    The counts based on defendant's submitted
                    Application ..................................................30

              2.    The counts based on defendant's interview....................31

        C.    Argument ........................................................................31

              1.    The grand jury timely returned the superseding
                    indictment ..................................................31

              2.    The superseding indictment did not broaden or
                    substantially amend the original charges........................34

ii

III.    THE COUNTS IN THE SUPERSEDING INDICTMENT
        WERE NOT MULTIPLICIOUS ..........................................................35

        A.    Standard Of Review ................................................................35

        B.    Background ...............................................................................36

        C.    Each Statutory Violation Required Proof Of A
              Separate Element.......................................................................36

IV.     DEFENDANT'S TRIAL BEGAN WITHIN THE SPEEDY
        TRIAL ACT TIME PERIOD ................................................................42

        A.    Standard Of Review ................................................................42

        B.    Background ...............................................................................42

        C.    The Court Calendared Defendant's Trial Within
              the 70-Day Limit .......................................................................46

V.      THE COURT SHOULD REJECT DEFENDANT'S
        INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM...................49

        A.    Standard Of Review ................................................................49

        B.    Background ...............................................................................49

        C.    Defendant's Claim Should Be Denied Or
              Addressed In A Habeas Proceeding..........................................51

CONCLUSION .............................................................................................54

STATEMENT OF RELATED CASES .......................................................55

CERTIFICATE OF COMPLIANCE...........................................................56

CERTIFICATE OF SERVICE ....................................................................57

# TABLE OF AUTHORITIES

## <u>FEDERAL CASES</u>

*Albernaz v. United States*, 450 U.S. 333 (1981) .......................................37

*Blockburger v. United States*, 284 U.S. 299 (1932) ................................... 36, 37, 40

*Bronston v. United States*, 409 U.S. 352 (1973).......................................23

*Burnet v. Willingham Loan & Trust Co.*, 282 U.S. 437 (1931)............................32

*Hovey v. Ayers*, 458 F.3d 892 (9th Cir. 2006) .........................................52

*Lowry v. Lewis*, 21 F.3d 344 (9th Cir. 1994) ..........................................52

*Strickland v. Washington*, 466 U.S. 668 (1984) ........................................52

*United States v. Awad*, 551 F.3d 930 (9th Cir. 2009)................................39

*United States v. Banks*, 682 F.2d 841 (9th Cir. 1982) ..............................35

*United States v. Beardslee*, 197 F.3d 378 (9th Cir. 1999)........................33

*United States v. Camper*, 384 F.3d 1073 (9th Cir. 2004) .......................37

*United States v. Cruz*, 554 F.3d 840 (9th Cir. 2009) ........................ 20, 53

*United States v. Culliton*, 328 F.3d 1074 (9th Cir. 2003)................................ 23, 24

*United States v. Damrah*, 412 F.3d 618 (5th Cir. 2005)................................. 24, 25

*United States v. Feldman*, 853 F.2d 648 (9th Cir. 1988).........................................53

*United States v. Flyer*, 633 F.3d 911 (9th Cir. 2011) ..............................................19

*United States v. Friedman*, 649 F.2d 199 (3d Cir. 1981) ........................................35

*United States v. Garcia-Guizar*, 160 F.3d 511 (9th Cir. 1998) ..............................53

*United States v. Hickey*, 580 F.3d 922 (9th Cir. 2009)..................................... 28, 46

*United States v. Lewis*, 611 F.3d 1172 (9th Cir. 2010)...............................................49

*United States v. Liu*, 731 F.3d 982 (9th Cir. 2013)...................................................34

*United States v. Mancuso*, 718 F.3d 780 (9th Cir. 2013) ........................................36

*United States v. McKenna*, 327 F.3d 830 (9th Cir. 2003) ................... 22, 23, 38, 51

*United States v. Medina*, 524 F.3d 974 (9th Cir. 2008).................................... 42, 49

*United States v. Mohsen*, 587 F.3d 1028 (9th Cir. 2009) ........................................24

*United States v. Moses*, 94 F.3d 182 (5th Cir. 1996)...............................................25

*United States v. Murillo*, 288 F.3d 1126 (9th Cir. 2002).........................................46

*United States v. Nevils*, 598 F.3d 1158 (9th Cir. 2010) (en banc)...........................19

*United States v. Nickerson*, 556 F.3d 1014 (9th Cir. 2009)....................................49

*United States v. Olsowy*, 836 F.2d 439 (9th Cir. 1988).............................. 39, 40, 41

*United States v. Overton*, 573 F.3d 679 (9th Cir. 2009)..........................................37

*United States v. Pacheco*, 912 F.2d 297 (9th Cir. 1990) .........................................34

*United States v. Palomba*, 31 F.3d 1456 (9th Cir. 1994).........................................48

*United States v. Rahman*, 642 F.3d 1257 (9th Cir. 2011)........................................51

*United States v. Ramirez-Cortez*, 213 F.3d 1149 (9th Cir. 2000)...........................46

*United States v. Salas-Camacho*, 859 F.2d 788 (9th Cir. 1988)....................... 40, 41

*United States v. Sears, Roebuck & Co., Inc.*, 785 F.2d 777 (9th Cir. 1986) ...........35

*United States v. Shetty*, 130 F.3d 1324 (9th Cir. 1997) ..................................... 47, 48

*United States v. Stewart*, 420 F.3d 1007 (9th Cir. 2005)..........................................36

*United States v. Suarez*, 682 F.3d 1214 (9th Cir. 2012) ...........................................19

*United States v. Thomas*, 612 F.3d 1107 (9th Cir. 2010) ........................................23

*United States v. Vargas-Castillo*, 329 F.3d 715 (9th Cir. 2003) ............................36

*United States v. Wahchumwah*, 710 F.3d 862 (9th Cir. 2013) ...............................36

*United States v. White Eagle*, 721 F.3d 1108 (9th Cir. 2013) ................................21

*United States v. Youssef*, 547 F.3d 1090 (9th Cir. 2008).................................. 38, 39

*United States v. Zalapa*, 509 F.3d 1060 (9th Cir. 2007)..........................................35

*Zedner v. United States*, 547 U.S. 489 (2006) .......................................................48

## FEDERAL STATUTES, RULES, AND REGULATIONS

18 U.S.C. § 287 ................................................................................ 39, 40

18 U.S.C. § 1001 ............................................................................. *passim*

18 U.S.C. § 1015(a) ......................................................................... *passim*

18 U.S.C. § 1621 ............................................................................. *passim*

Speedy Trial Act (18 U.S.C. § 3161)................................................ *passim*

18 U.S.C. § 3231 .....................................................................................1

18 U.S.C. § 3282(a) ..............................................................................32

18 U.S.C. § 3553....................................................................................50

18 U.S.C. § 3742....................................................................................1

28 U.S.C. § 1291....................................................................................1

Fed. R. Crim. P. 29 ................................................................................. *passim*

Fed. R. Crim. P. 33 ................................................................ 18, 49, 51, 52, 54

Fed. R. Crim. P. 45(a) ...........................................................................32

8 C.F.R. § 335.2 ..................................................................................26

No. 11-10192

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

   Plaintiff-Appellee,

         v.

HASSAN ABPIKAR,

   Defendant-Appellant.

_____

**BRIEF FOR THE UNITED STATES AS APPELLEE**

**JURISDICTION, TIMELINESS, AND BAIL STATUS**

Defendant appeals his multiple convictions following a jury trial.  This

Court has jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C. § 1291.  The district

court had jurisdiction under 18 U.S.C. § 3231.  The district court sentenced

defendant on April 11, 2011, and entered its judgment on April 19, 2011.  Clerk's

Record ("CR"):258-259; Appellant's Excerpts of Record ("ER"):4-11.  Defendant

filed a timely notice of appeal on April 13, 2011.  CR:260; ER:1-3.  Defendant has

completed serving the 36-month term of imprisonment imposed by the court and is

currently on supervised release.  *See* www.bop.gov.

## ISSUES PRESENTED

I.      Whether, viewing in the light most favorable to the government, the evidence was sufficient for the jury to find defendant guilty of falsifying and concealing a material fact in a matter before a government agency and perjury where:

(A) on November 24, 2004, defendant failed to disclose on his sworn naturalization application, submitted to the Department of Homeland Security, that he had previously been criminally charged in Oklahoma for telephoning a bomb threat; and

(B) on May 18, 2004, defendant failed to disclose during his sworn interview with a Department of Homeland Security adjudicating officer that he had been arrested on California criminal charges four days earlier.

II.     Whether the statute of limitations barred prosecution where the grand jury returned a superseding indictment within the five-year limitation period and, in any event, the superseding indictment did not substantially broaden or amend the pending charges.

III.    Whether the counts in the superseding indictment were multiplicious where each separately-charged statutory provision required proof of an additional fact that the other charges did not.

2

IV.    Whether defendant's trial began within the 70-day requirement of the Speedy Trial Act where, prior to trial commencing, the government filed a timeline showing that 18 days remained on the speedy trial clock, defendant did not dispute the timeline, and the court excluded time after making "interest of justice" and "continuity of counsel" findings, pursuant to the parties' stipulation.

V.    Whether defendant's ineffective assistance of counsel claim raised first on direct appeal should be dismissed as not yet ripe or alternatively dismissed on the merits where defendant has failed to establish prejudice.

## STATEMENT OF THE CASE

On November 24, 2009, a federal grand jury returned a six-count superseding indictment that charged defendant with falsifying and concealing a material fact in a matter before a government agency, in violation of 18 U.S.C. § 1001(a)(1) (counts one and four), making a false statement under oath relating to naturalization or citizenship, in violation of 18 U.S.C. § 1015(a) (counts two and five), and perjury, in violation of 18 U.S.C. § 1621 (counts three and six).  CR:69; ER:699-706.

On October 26, 2010, defendant's jury trial began, the Honorable Ronald M. Whyte presiding.  CR:206.  On November 2, 2010, the jury returned guilty verdicts against defendant on all counts.  CR:212; ER:80-87.  The court subsequently sentenced defendant to 36 months' imprisonment on each count to run

3

concurrently, followed by three years of supervised release, a $5,000 fine, and $600 in mandatory special assessments.  ER:6-7, 9-10.  This appeal followed.  CR:248.

## STATEMENT OF THE FACTS

In 2004, defendant, a lawful permanent resident from Iran, initiated naturalization proceedings when he submitted a Form N-400 Application ("Application") for Naturalization that the Department of Homeland Security received on November 24, 2004.  ER:266-276, 499-501; Government's Supplemental Excerpts of Record ("SER"):1.[1]  Naturalization is the means by which a lawful permanent resident alien gains United States citizenship.  ER:488-489.

### A. Defendant Submitted His Application To The Department Of Homeland Security Under Penalty Of Perjury

Defendant signed his Application on September 19, 2004, and certified, under penalty of perjury, that "this application, and the evidence submitted with it, are all true and correct."  ER:276, 523.  The "Good Moral Character" Application section instructs an applicant that "you must answer 'YES' to the following questions, if applicable, even if your records were sealed or otherwise cleared or if

---

[1]  The government included in its excerpts the first page of defendant's Application to show the stamped "recd" date of "'04Nov24," which cannot be seen on the first page of the Application in defendant's excerpts.  *Compare* ER:267 and SER:1.

4

anyone, including a judge, law enforcement officer, or attorney, told you that you

no longer have a record." ER:274. Defendant answered "yes" to the following

questions ("Q"):

> Q16:  Have you **EVER** been arrested, cited, or detained
> by any law enforcement officer (including INS and
> military officers) for any reason?

> Q17:  Have you **EVER** been charged with committing
> any crime or offense?

> Q18:  Have you **EVER** been convicted of a crime or
> offense?

> Q20:  Have you **EVER** received a suspended sentence,
> been placed on probation, or been paroled?

> Q21:  Have you **EVER** been in jail or prison?

ER:274 (emphasis in original). The form further instructed that "[i]f you answered

'Yes' to any of questions 15 through 21, complete the following table. If you need

more space, use a separate sheet of paper to give the same information." ER:274.

Defendant completed the table below:

| Why were you arrested, cited, detained, or charged? | Date arrested, cited, detained, or charged? (Month/Day/Year) | Where were you arrested, cited, detained or charged? (City, State, Country) | Outcome or disposition of the arrest, citation, detention or charge (No charges filed, charges dismissed, jail, probation, etc.) |
|---|---|---|---|
| Selling Cars without the Sales person License | In 1993-92 | San Jose - Calif. U.S.A. | Probation - Penalty fees = Paid |
| No-Lic. - Petty Theft Reduction | In 1998-99 | San Jose - Calif. U.S.A. | Probation - Work Furlough Paid fees - |
| Improper use of Dealer Lic. Plate | In 1995-93 | San Jose - Calif. U.S.A. | Jury Trial - Dismissed I was Found Innocent |

ER:274. Defendant did not submit a separate sheet with additional information.

Part 3 of the Application ("Information About You") asks an applicant, "what is your current marital status?," and offers five possible answers: "single, never married," "married," "divorced," "widowed," and "marriage annulled or other (explain)." ER:268. Defendant checked "single, never married." ER:268. If an applicant has previously been married, Part 8 asks for spousal information. ER:271. Defendant wrote "N/A" in this section and left the two pages of spousal questions blank. ER:270, 504.

In Part 4 of the Application, defendant listed his home address as 3254 Fleur De Lis Ct., San Jose, California. ER:268, 508. In Part 6, an applicant must list where he/she has "lived during the last 5 years." ER:269. Defendant typed "Current Home Address – Same as Part 4.A," and stated that he had lived at that address "from 05/1990 to Present." ER:269.

## B.    Defendant Is Interviewed Under Penalty Of Perjury

David Jio, an adjudicating officer with Citizenship Immigration Services, a component of the Department of Homeland Security, interviewed defendant on May 18, 2005. ER:276, 487, 489, 501-502. The purpose of a naturalization interview is for the adjudicating officer to review the Application with the applicant, confirm the information on it, and make changes if the information is not correct. ER:530. Jio explained that among the reasons to deny a naturalization Application are false statements, criminal acts that affect good moral character, and

6

an inability to understand English.  ER:497.  Jio conducted 13 to 14 citizenship interviews a day, roughly 10,000 to 12,000 each year.  ER:491-492.  While Jio does not have a specific recollection of interviewing defendant, he followed a consistent interview pattern and practice, which is evidenced on defendant's Application by Jio's red-pen notations.  ER:267-276, 492-499.

At the outset of each interview, Jio administers the oath so that "everything he's telling me is the truth" and to ensure that "the applicant understands the seriousness of this whole process."  ER:493.  Jio relies on the applicant to be truthful.  ER:530-531.  Jio next verifies the applicant's identity to confirm that the person interviewed is the same person who submitted the Application.  ER:493-494.  Finally, Jio accesses the individual's English abilities to ensure that the person has a basic understanding of English.  ER:494.

After this, Jio reviews each page of the N-400 Application with the applicant, starting at page one and proceeding in order, to the end when the applicant signs the form.  ER:494-496.  Jio marks any changes and additions on the Application in red ink and these red edits help him recall the interview.  ER:495, 498.  The information that defendant submitted on his Application is in black ink; notations made by Jio during the interview are noted in red ink.  ER:495, 502.

### 1.    *Defendant provides his marital history*

The red slash mark on defendant's Application indicates that Jio discussed marital history with defendant. ER:270-271, 505. Based on that discussion, Jio wrote a "0" in the box that asked "how many times have you been married (including annulled marriages)?" and he circled a "1" to evidence that this was the first change made to the Application at the interview. ER:270, 505. Jio explained that the marital history section provides "critical information" to the process because "a lot of people get their greens cards through marriage," and so when he sees "married" checked, it raises a "yellow flag" to ask how the applicant acquired his or her green card. ER:506. When an applicant checks "single," the issue of how the individual obtained their green card is not as important because there is "less possibility of fraud." ER:506. Defendant never told Jio during the interview that he previously had been married because if he had, Jio would have noted that "critical information" in red ink. ER:506-507.

### 2.    *Defendant lists a resident address*

Jio's normal practice is to confirm the applicant's resident address and the red markings on defendant's Application demonstrate that Jio did that with defendant. ER:268-269, 508-509. Defendant never told Jio that he lived at any address other than that listed on his Application because Jio would have noted that information in red pen. ER:509-510. Jio explained that residency information can

8

impact the naturalization process because, to be eligible for citizenship, an applicant must have lived in a jurisdiction for at least three months.  ER:510.

### 3. *Defendant details his criminal history*

Jio explained that the "Good Moral Character" section is a "major factor" in the citizenship process and reviewing officers "judge carefully" the information in this section when making a recommendation decision.  ER:511.  On the written Application, defendant answered "yes" to five of the seven questions and, as a result, was required to provide further details.  ER:274, 512-515.  He listed: (1) a 1993 conviction for "selling cars without the sales person license" in San Jose, CA., for which he received probation; (2) a 1998 "no license, petty theft resolution" for which he received work furlough probation; and (3) a 1995 charge of improper use of a dealer license plate, on which he was "found innocent." ER:274, 515.  The Application directed defendant to "use a separate sheet of paper" if more space was needed, and defendant had not submitted an additional sheet with his Application.  ER:274, 515-516.

Jio's red markings on defendant's Application indicate that defendant provided no other information in this section during the interview.  ER:274, 276, 516.  Defendant never told Jio that he had been arrested, charged, and convicted of telephoning a bomb threat because Jio would have noted that additional information in red ink on the Application, and that information would have

9

influenced Jio's decision in reviewing the Application.  ER:516-518.  Defendant

also did not tell Jio that he had been arrested on May 14, 2005, for burglary,

receiving stolen property, or theft of person property because again, if he had, Jio

would have noted that on the application.  ER:519-521.

At the end of the interview, both Jio and defendant signed the Application.

ER:276, 523-524.  Defendant affirmed again, under penalty of perjury, that "the

contents of this application for naturalization, including corrections numbered 1

through 3" were "true and correct to the best of [defendant's] knowledge and

belief."  ER:276, 523.[2]

### C.    Defendant Provides False and Misleading Answers

Defendant provided false and incomplete information on his Application and

at his interview about his marital status, his address, and his criminal history.

### 1.    Defendant's complete criminal history

In 1979, when he was 19 years old, defendant pleaded guilty in Oklahoma

state court to telephoning a bomb threat and received a two-year suspended

sentence.  ER:584-592.  Defendant had also suffered a conviction in 1979 for

assault and battery on a police officer.  ER:592-599.  On May 14, 2005, four days

before defendant's interview with Jio, San Jose Police Officer Adam Jenkins

---

[2]   Based on information that defendant provided during his interview, besides the
first change in the marriage section, Jio made red-pen additions on the Application
for defendant's selective service number and date of registration.  ER:270, 275.

arrested him at the San Jose Valley Fair Mall for petty theft, possession of stolen property, burglary, and possession of burglary tools.  ER:572-574, 579.

### 2.    *Defendant's true marital history*

In 1982, defendant approached Ronnette Mayuiers at a club and asked if she would marry him so that he could obtain his green card.  ER:606-607. Approximately two months later, on November 5, 1982, Mayuiers married defendant.  ER:607-609.  Soon after, Mayuiers participated in defendant's immigration proceedings.  ER:609-610.  On October 26, 1983, she filed for a divorce, which became final on May 29, 1984.  ER:610-613.  Since that date, Mayuiers has had no contact with defendant.  ER:613.

### 3.    *Defendant lists a false resident address*

From 1999 until 2009, Cherryminn Caparas owned 3254 Fleur De Lis Court in San Jose, the address that defendant listed on his Application as his residence for the past five years, and testified that she never rented to defendant.  ER:284-286. From 2002 until 2009, Caparas rented that residence to her aunt, Teresa Tantay. ER:286-288.  Tantay lived at the San Jose residence with her son and his family and she never sublet the property or housed any borders.  ER:298-291.  Once, in the winter of 2008, Tantay saw a man stealing mail from her mailbox.  ER:291-292.  When she startled him, he drove away.  ER:292.  In 2007, Tantay began receiving "a lot" of mail addressed to Hassan Abpikar.  ER:292-295.  She returned

11

the mail to the post office with the notation, "never lived here."  ER:295.  Later, when a law enforcement officer came to her house looking for defendant, she said Abpikar did not live there, and gave the officer the additional collected mail addressed to Abpikar.  ER:293-294.

### D.    Defendant Testifies At Trial

Defendant testified that he entered the United States from Iran on June 18, 1979, on an F1 Student Visa and enrolled at Oklahoma City Southwestern Junior College.  ER:371-372, 407.  In 1981, he moved to California and enrolled at San Jose State University.  ER:430.  In 1983, he earned his Bachelor of Science degree in Chemistry, and in 1987, a Master's degree in Analytical Chemistry.  ER:432.  When defendant first arrived in this country, he spoke only Farsi and knew only a few English words and phrases.  ER:96-97, 99.

When asked about the 1979 Oklahoma charge against him for telephoning a bomb threat and shown court documents relating to that charge and conviction, defendant said that he had never seen the documents before, that his then attorney never reviewed those documents with him, and that he had not been provided a Farsi language interpreter, so he did not understand the documents.  ER:374-380.  At that time, defendant relied on his ex-roommate in Oklahoma to communicate with his attorney and to explain what had happened.  ER:380-381.  Defendant's roommate told him that the case was "all done, finished, dismissed."  ER:381.

12

Because of that, defendant did not list the Oklahoma bomb threat case on his Application because he did not think there was anything to disclose. ER:383-385.

Defendant said that he lived at 3254 Fleur De Lis Court in San Jose starting in 1989, but not in 2004 as he put on the Application. ER:385-386. He realized his mistake after submitting his Application. ER:386. To correct the problem, he wrote and mailed a letter on November 21, 2004, asking that "any inquiry or information" be sent to him at "P.O. Box 1711, San Jose, California 95109." ER:387-389. A copy of the letter was admitted at trial as defense exhibit A. ER:386-388.

Defendant explained that he checked "single, never married" on his Application because "it's been so long that . . . I consider myself single." ER:389. He also said that in Iranian culture once you are not married, "you say you're single because if you say you are divorcee, it's like a stigma." ER:390.

At his interview, defendant said that he gave Jio his green card, which showed that he had previously been married. ER:400. Next, Jio gave defendant the English test, which he failed. ER:401. When Jio tried to reschedule the interview, defendant asked for time to study, and Jio gave him 20 minutes to study papers and booklets "downstairs." ER:401. When defendant returned, he "passed the test quickly right there and then." ER:401. He said that Jio asked, "what happened in Oklahoma," and defendant replied "that was a long time ago. It's

13

gone.  It's dismissed."  ER:384-385, 398.  Defendant claimed that he told Jio about

his May 14, 2005, arrest at the Westfield Mall.  ER:404.  He also told Jio that he

had previously been married.  ER:393.  Defendant recalled "everything" "exactly"

about his interview.  Defendant said that he never signed the Application at the

interview under penalty of perjury -- he said the signature on the form was not

his -- because Jio stopped him from signing because of "defects."  ER:397-400.

### E.    The Jury's Verdict

The jury found defendant guilty on all counts.  ER:80-87.  For each count,

the verdict form detailed the allegations and asked the jury to "put a check on the

line" next to any allegation to which it unanimously agreed.  ER:80-87.

####     1.    *The jury finds defendant guilty of violating Section 1001*

For count one -- falsifying and concealing a material fact in a matter before a

government agency, in violation of 18 U.S.C. § 1001, for defendant's statements in

his Application -- the jury unanimously found that defendant "failed to disclose

that on or about December 6, 1979, he was charged by the State of Oklahoma for

the offense of Telephoning a Bomb Threat."  ER:80.  For count four -- falsifying

and concealing a material fact in a matter before a government agency, in violation

of 18 U.S.C. § 1001, during his interview -- the jury unanimously found that

defendant "failed to disclose that on May 14, 2005 he was arrested, cited and

detained by the State of California for the offenses of Burglary -- First Degree,

14

Receiving Stolen Property, Possessing Burglary Tools and Theft of Personal Property/Petty Theft."  ER:84.

>    2.    *The jury finds defendant guilty of violating Section 1015(a)*

For count two -- making a false statement under oath relating to naturalization or citizenship, in violation of 18 U.S.C. § 1015(a), for defendant's statements in his Application -- the jury unanimously found that defendant made three false statements in that he: (1) "failed to disclose that on or about December 6, 1979, he was charged by the State of Oklahoma for the offense of Telephoning a Bomb Threat"; (2) "falsely stated that his home address was '3254 Fleur De Lis Ct., San Jose, Calif.'"; and (3) "falsely checked the box marked 'Single, Never Married.'"  ER:81-82.  For count five -- making a false statement under oath relating to naturalization or citizenship, in violation of 18 U.S.C. § 1015(a), at his interview -- the jury unanimously found that defendant made three false statements in that he (1) "failed to disclose that on May 14, 2005, he was arrested, cited and detained by the State of California for the offenses of Burglary -- First Degree, Receiving Stolen Property, Possessing Burglary Tools and Theft of Personal Property/Petty Theft"; (2) "falsely stated that his home address was '3254 Fleur De

15

Lis Ct., San Jose, Calif.'"; and (3) "falsely check the box marked 'Single, Never Married.'" ER:86.[3]

### 3. The jury finds defendant guilty of violating Section 1621

For count three -- perjury, in violation of 18 U.S.C. § 1621, for defendant's statements in his Application -- the jury unanimously found that defendant "failed to disclose that on or about December 6, 1979, he was charged by the State of Oklahoma for the offense of Telephoning a Bomb Threat." ER:83. For count six -- perjury, in violation of 18 U.S.C. § 1621, at his interview -- the jury unanimously found that defendant "failed to disclose that on May 14, 2005, he was arrested, cited and detained by the State of California for the offenses of Burglary -- First Degree, Receiving Stolen Property, Possessing Burglary Tools and Theft of Personal Property/Petty Theft." ER:87.

## SUMMARY OF ARGUMENT

The evidence at trial sufficiently proved that defendant falsified and concealed a material fact from the Department of Homeland Security, in violation of 18 U.S.C. § 1001, and perjured himself, in violation of 18 U.S.C. § 1621, in both his written Application for Naturalization and at his Naturalization interview. The jury found defendant guilty of failing to disclose on his Application that he had been charged in 1979 with telephoning a bomb threat, and failing to disclose at

---

[3] Defendant does not challenge the sufficiency of the evidence on counts two or five.

16

his interview that he had been arrested on California criminal charges after he submitted his Application. Viewing the evidence in the light most favorable to the government, the jury could reasonably have found that defendant willfully concealed his Oklahoma felony bombing charge on his Application because it was the most serious criminal charge that he had sustained, and also willfully concealed his California arrest at the interview because it had occurred less than a week earlier and defendant knew that complete, truthful answers would negatively impact his Application.

The grand jury returned the superseding indictment within the applicable statute of limitations. The five-year statute of limitations began when the Department of Homeland Security received defendant's filed Application on November 24, 2004, and the superseding indictment was filed exactly five years later. Moreover, even if the Court should find that the superseding indictment was not timely filed, there was no statute of limitations violation because it did not broaden or amend the original indictment.

The counts in the superseding indictment were not multiplicious. First, defendant was charged with two counts of violating each charged statute based on false statements that he made on two different dates at two distinct stages in the naturalization process. Second, each statutory violation required proof of an additional element that the others did not.

17

The court calendared defendant's trial within the Speedy Trial Act's 70-day time limit. When the government filed a report that detailed all Speedy Trial Act exclusions made and concluded that 18 days remained on the clock, defendant did not challenge the government's calculation. The record shows that the court thereafter continued the trial to allow defendant's fourth attorney time for effective preparation and in the interest of justice. Defendant agreed to the second-to-the-last continuance, which is the only one that he challenges on appeal, and stipulated to the facts supporting that it was in the interest of justice. The court's factual findings were not clearly erroneous, the record supports the excludable time findings, and defendant's trial began within the required time period.

The record is not sufficiently developed for the Court to address defendant's ineffective assistance of counsel claim because it does not contain any explanation of counsel's reasons for failing to file motions. However, even if the Court considers the claim, it should deny it because defendant has failed to prove prejudice. The record shows that overwhelming evidence supports each count of conviction, and because of that, the district court would not have granted a Federal Rule of Criminal Procedure Rule 29 or Rule 33 motion even if counsel had so moved.

18

**ARGUMENT**

## I. SUFFICENT EVIDENCE SUPPORTS DEFENDANT'S CONVICTIONS ON THE CHALLENGED COUNTS

Defendant challenges his convictions on counts one (Section 1001) and three (Section 1621) for failing to disclose that he had been charged in Oklahoma with telephoning a bombing threat, AOB:20-23, and on counts four (Section 1001) and six (Section 1621) for failing to disclose at his naturalization interview an arrest that occurred after he submitted his Application, but prior to his interview. AOB:25-26. The record demonstrates that sufficient evidence supports each of the jury's guilty verdicts.

### A. Standard Of Review

Evidence is sufficient to support a conviction "if, viewing it in the light most favorable to the government, *any* rational trier of fact would have found defendant guilty beyond a reasonable doubt of the elements of the crime." *See United States v. Suarez*, 682 F.3d 1214, 1219 (9th Cir. 2012) (emphasis in original) (citing *United States v. Nevils*, 598 F.3d 1158, 1163-1164 (9th Cir. 2010) (en banc)) (addressing sufficiency claims, this Court should not construe evidence in a manner favoring innocence rather than in a manner favoring guilt).

Here, as defendant concedes, the Court reviews for plain error because defendant did not challenge the sufficiency of evidence below. AOB:17, 25; *United States v. Flyer*, 633 F.3d 911, 917 (9th Cir. 2011). Under plain-error

19

review, reversal is permitted only when there is (1) error that is (2) plain, (3)

affects substantial rights, and (4) seriously affects the fairness, integrity, or public

reputation of judicial proceedings.  *See United States v. Cruz*, 554 F.3d 840, 844

(9th Cir. 2009) (applying plain-error review where defendant did not properly

preserve a sufficiency-of-the-evidence claim).

B.    **The Evidence Supports Defendant's Convictions For Failing To Disclose In His Sworn Application That He Had Previously Been Charged In State Court With Telephoning A Bomb Threat**

The jury convicted defendant of falsifying and concealing a material fact in

a matter before a government agency, in violation of 18 U.S.C. § 1001(a)(1) (count

one), and of perjury, in violation of 18 U.S.C. § 1621 (count three) for his

statements on the Application received by the Department of Homeland Security in

November, 2004.[4]  Specifically, the jury found that defendant failed to disclose on

the sworn Application that he had been charged in 1979, in Oklahoma, with

telephoning a bomb threat.  ER:80, 83.

To prove the Section 1001(a)(1) violation (count one), the government had

to show:

---

[4]    As noted *supra*, defendant does not challenge the sufficiency of his convictions for providing a false statement under oath relating to naturalization or citizenship, in violation of 18 U.S.C. § 1015(a) (counts two and five), where the jury specifically found that defendant failed to disclose his Oklahoma bombing charge, his true marital status, and his correct resident address.  ER:81-82, 85-86.

> First, [defendant] did knowingly and willfully falsify, conceal, or cover up a material fact by trick, scheme, or device in that he knowingly and willfully failed to disclose information in response to questions on a Form N-400, application for naturalization, in a matter within the jurisdiction of the Department of Homeland Security;
>
> Second, [defendant] acted willfully, that is, deliberately and with knowledge that the statement was untrue; and
>
> Third, the statement was material to the United States Department of Homeland Security's activities or decisions.

ER:224-225 (instructions given); *see United States v. White Eagle*, 721 F.3d 1108, 1116 (9th Cir. 2013) (discussing Section 1001(a)(1) elements).

To prove a violation of 18 U.S.C. § 1621 (count three) the government must show:

> First, that [defendant] testified on or about November 29th, 2004, under oath in writing on his form N-400 Application for Naturalization in response to questions 17, 19, and 20 of part 10.D that he had disclosed relevant prior criminal conduct and court proceedings;
>
> Second, the testimony was false;
>
> Third, the false testimony was material to matters before the Department of Homeland Security; that is, the testimony had a natural tendency to influence, or was capable of influencing the actions of the Department of Homeland Security; and
>
> Fourth, [defendant] acted willfully, that is, deliberately and with knowledge that the testimony was false.

21

ER:230-231(instructions given); *see United States v. McKenna,* 327 F.3d 830, 838 (9th Cir. 2003) (elements of perjury charged under Section 1621 are (1) false testimony under oath, (2) concerning a material matter, (3) with the willful intent to provide false testimony).

Here, the government proved the required elements for both offenses beyond a reasonable doubt. First, the evidence established that defendant had been charged in 1979 in Oklahoma with telephoning a bomb threat. On appeal, defendant does not claim otherwise. Second, it is also undisputed that defendant failed to name that charge in his Application. Defendant failed to list the criminal charge even though the instructions were that an applicant "must answer 'Yes' to the following questions, if applicable," including the question "[h]ave you EVER been arrested, cited, or detained by any law enforcement officer (including INS and military officers) for any reason?," and even though the Application instructed that a "yes" answer required the application to provide further explanation. ER:274.

At trial, defendant claimed that he did not list the Oklahoma bomb threat charge on his Application because his roommate had told him at the time that the charge was "gone." Even if the jury believed defendant's testimony on this point, his explanation fails to exonerate him because the Application clearly instructs that he must answer "yes," "even if your records were sealed or otherwise cleared or if

*anyone*, including a judge, law enforcement officer, or attorney, told you that you no longer have a record." ER:274, 514 (emphasis added).

On appeal, defendant makes a different argument. While conceding that he failed "to disclose pertinent criminal history," AOB:23, citing *Bronston v. United States*, 409 U.S. 352 (1973), he contends that the Application did not require disclosure of *all* criminal history and his answers were thus "literally true" because he "complete[d] the following table." AOB:16, 18-19, 21-23. But in evaluating defendant's claim that his answers to the Application questions cannot sustain a perjury conviction, this Court "must consider the context in which the question[s were] asked, as well as the potentially ambiguous wording." *McKenna*, 327 F.3d at 841 (citation omitted). When a defendant claims that his allegedly perjured testimony was literally true based on his own purported understanding of the questions, the issue is "whether the jury could conclude beyond a reasonable doubt that the defendant understood the question as did the government and that, so understood, the defendant's answer was false." *United States v. Thomas*, 612 F.3d 1107, 1117 (9th Cir. 2010). "It is for the jury to decide which construction the defendant placed on a question." *United States v. Culliton*, 328 F.3d 1074, 1078 (9th Cir. 2003).

Here, the context in which the question is asked makes plain that the Application sought information as to all of defendant's arrests so that the

23

Department of Homeland Security could evaluate defendant's moral character for citizenship. Defendant's argument that completing the table absolved him of truthfully detailing his full criminal history is rebutted by the Application's direction that "if you need more space, use a separate sheet of paper." ER:274. This instruction makes clear that if the table did not provide enough room for an applicant's answers, a separate sheet of paper must be used to fully answer the questions. *Compare United States v. Mohsen*, 587 F.3d 1028, 1032 (9th Cir. 2009) (rejecting claim that misleading answers were "literally true" in finding sufficient evidence for jury to conclude that Mohsen committed perjury because he understood the question as it was asked, and intentionally lied); *Culliton*, 328 F.3d at 1080 (in a medical history form "[t]he ambiguity [defendant] points to in the questions . . . simply does not account for his failure to disclose the far more severe physical and mental impairments that formed the basis of his personal injury action").

By failing to disclose his most serious past criminal conduct, the jury reasonably could infer that defendant acted willfully, knowing full well that if he truthfully answered the questions on the Application, he would be denied citizenship. In *United States v. Damrah*, 412 F.3d 618, 621 (5th Cir. 2005), Damrah filed a naturalization Application and failed to truthfully respond to the question that required he list his present and past memberships and affiliations with

24

every organization. Damrah failed to list, among others, the Palestinian Islamic Jihad, which the United States Department of State has designated a Terrorist Organization. *Id*. at 625. When he argued that the evidence was insufficient to prove that he "knowingly" gave false answers because he did not list that group because he never paid dues and was not listed on the membership list, the Court rejected that claim and found that "[t]he reasonable inference is that Damrah was aware that if he answered the questions on the form truthfully he would not be entitled to citizenship." *Id*. at 625-627 (citing *United States v. Moses*, 94 F.3d 182, 187 (5th Cir. 1996) ("The jury could infer from Moses's misrepresentation that he knew that the true status of his marital relationship would render him not entitled to citizenship.")).

The same is true here. Defendant provided false and misleading information about facts that mattered. Viewing the evidence in the light most favorable to the government, there is ample evidence upon which a reasonable jury could conclude beyond a reasonable doubt that defendant intentionally failed to list his most serious criminal charge on the Application.

### C.   The Evidence Supports Defendant's Convictions For Failing To Disclose At His Sworn Interview That He Had Been Arrested On Criminal Charges Four Days Earlier

The jury found defendant guilty of falsifying and concealing a material fact in a matter before a government agency on May 18, 2005, the date of his interview,

25

in violation of 18 U.S.C. § 1001(a)(1) (count four), ER:80, 82-83, 699-701, and of perjury, in violation of 18 U.S.C. § 1621 (count six), for failing to disclose to Jio during his Immigration interview that he had been arrested four days earlier -- on May 14, 2005 -- for California criminal offenses.  ER:84, 87.

Defendant contends, without record or legal citation, that "[t]he citizenship application does not require the disclosure of arrests that occur after it is filled out and submitted."  AOB:26.  Defendant is wrong because, as Officer Jio explained, the purpose of the interview is to review the application with the applicant to see "if everything is correct, if there's any changes made, and then make a decision from that."  ER:530; *see also* 8 C.F.R. § 335.2 (c) ("[w]henever necessary, the examining officer shall correct written answers in the application for naturalization to conform to the oral statements made under oath or affirmation"); 8 C.F.R. § 335.2 (e) ("[a]t the conclusion of the examination, all corrections made on the application form and all supplemental material shall be consecutively numbered and listed in the space provided on the applicant's affidavit contained in the application form").

Jio testified that, evidenced by his red mark on defendant's Application, he asked defendant about Application Question 16 ("Have you EVER been arrested, cited, or detained by any law enforcement officer (including INS and military officers) for any reason?").  ER:274, 512-514 ("I talked to him about number 16").

26

This was consistent with Jio's practice of focusing on recent criminal conduct when he conducts interviews (he looks "carefully" at "criminal acts" committed during the last five years).  ER:497.

During the May 18, 2005, interview, defendant did not tell Jio that he had been arrested on May 14, 2005, for burglary, receiving stolen property, and theft of personal property.  ER:519.  Nor did defendant provide a written supplement with that additional information.  Jio explained that if an applicant has a criminal history that does not fit in the table, they must file a separate sheet.  ER:516 "(if you need more space use a separate sheet of paper to give the same information").  Jio wrote a "0" on defendant's Application during the interview to indicate that defendant did not submit any attachments.  ER:516.

At the end of the interview, defendant signed the Application ("Part 13. Signature at Interview") acknowledging Jio's notations and affirmed again, under penalty of perjury, that "the contents of this application for naturalization, including corrections numbered 1 through 3" are "true and correct to the best of my knowledge and belief."  ER:276.  As a result, it was reasonable for the jury to infer that defendant willfully concealed evidence of his most recent arrest in an effort to secure citizenship.  Sufficient evidence thus supports defendant's convictions on counts four and six for falsifying and concealing a material fact in a

27

matter before a government agency and for perjury at his naturalization interview on May 18, 2005.

## II.   THE GOVERNMENT TIMELY FILED THE ORIGINAL INDICTMENT AND THE SUPERSEDING INDICTMENT

Defendant contends that the superseding indictment substantially broadened the original indictment and thus violated the statute of limitations. AOB:32-36. Defendant's argument fails because the superseding indictment was returned within the statute of limitations. In any event, the superseding indictment did not, as defendant claims, broaden the original charges.

### A.   Standard Of Review

The statute of limitations is an affirmative defense that is waived if it is not raised at trial. *United States v. Hickey*, 580 F.3d 922, 928 n.1 (9th Cir. 2009). Here, defendant raised the issue below, CR:173; ER:640, so this Court reviews this question of law de novo. *Id*. at 929.[5]

### B.   Background

The grand jury returned the original indictment on August 20, 2008, which charged defendant with three counts of making a false statement under oath relating to naturalization or citizenship, in violation of 18 U.S.C. § 1015(a). CR:11; ER:710-711. Counts one and two charged that on or about November 29,

---

[5]  On October 13, 2010, defendant filed a motion to dismiss the superseding indictment based on a statute of limitations violation. CR:173; ER:640-645. On October 25, 2010, the court denied the motion. *See* ER:634.

2004, defendant failed to disclose in his Application for naturalization a 1980 Oklahoma state felony conviction for telephoning a bomb threat (count one) and falsely listed his home address (count two).  ER:710-711.  Count three charged that on or about May 18, 2005, defendant made false statements at his naturalization interview when he swore that the statements in his Application were true and correct to the best of his knowledge and belief.  ER:711.

On November 24, 2009, the grand jury returned a superseding indictment that added two counts of falsifying and concealing a material fact in a matter before a government agency for defendant's false statements in his Application received by the Department of Homeland Security on or about November 29, 2004 (count one),[6] and for defendant's false statements made during his immigration interview on May 18, 2005 (count four), all in violation of in violation of 18 U.S.C. § 1001, ER:699-701, 703-704, and two perjury counts for defendant swearing to false statements in the submitted Application (count three), and swearing to false statements at his immigration interview (count six), all in violation of 18 U.S.C. § 1621.  ER:702, 705-706.

---

[6]   The superseding indictment charged defendant with failing to list on his Application that he had been both charged and convicted in Oklahoma with telephoning a bomb threat.  ER:700.  The jury convicted defendant of only failing to list that criminal charge and did not convict defendant of failing to list the criminal conviction.  ER:80.

### 1.     The counts based on defendant's submitted Application

Specifically, the superseding indictment added a Section 1001 violation for falsifying and concealing a material fact in a matter before a government agency for statements in defendant's Application received in November 2004, that charged: (1) two paragraphs related to the bomb threat conviction charged in 1979 for which he was convicted in 1980 (count one, paras. a & c) and a third paragraph that defendant failed to list the suspended sentence he received in that case (count one, para. e); (2) three paragraphs that defendant failed to list that he had been charged in Oklahoma with assault and battery upon a police officer (count one, para. b), had been convicted (count one, para. d) and had been sentenced (count one, para. f) for that offense; and (3) one paragraph that defendant failed to disclose that, in 1993, he received a suspended sentence in California for acting as a dealer/manufacturer without a license (count one, para. g).  *See* ER:699-701.

The Section 1015(a) violation charged false statements under oath relating to the naturalization or citizenship violation alleged in the superseding indictment, and incorporated defendant's false statements regarding his criminal history in count one of the superseding indictment (count two, para. a), included from the original indictment that defendant had falsely stated his home address (count two, para. b), and added that defendant falsely reported his marital status (count three, para. c).  *See* ER:701-702.

30

The Section 1621(a) perjury violation charged that defendant had falsely represented his prior criminal history on the Application received by the Department of Homeland Security as detailed in count one of the superseding indictment. ER:702.

### 2. *The counts based on defendant's interview*

The superseding indictment added a Section 1001 charge for defendant falsifying and concealing a material fact for failing to disclose specific information at his May 18, 2005, interview. ER:703. The allegations were the same as those in count one of the superseding indictment with the additional allegation that defendant failed to disclose that he had been arrested on May 14, 2005 (count four, para. h). *See* ER:704. Counts five and six contained the same allegations as counts two and three of the superseding indictment and arose from the information defendant swore to at his naturalization interview. *See* ER:705-706.

### C. **Argument**

#### 1. *The grand jury timely returned the superseding indictment*

The record plainly shows that the superseding indictment was timely filed. The grand jury returned the initial indictment on August 20, 2008, and the superseding indictment on November 24, 2009. CR:11, 69; ER:699, 710. Both indictments charged criminal conduct that occurred on November 29, 2004, and May 18, 2005. ER:710-711. Indeed, defendant concedes that if the November 29,

31

2004, date is used as the date on which the earliest offense conduct occurred, the charges are "timely, though just by a mere five days." AOB:28.

Federal law establishes a default five-year statute of limitations for the prosecution of criminal offenses. *See* 18 U.S.C. § 3282(a) ("[e]xcept as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed"). The record plainly shows that the superseding indictment was timely filed within the five-year statutory period. The Department of Homeland Security received defendant's Application on November 24, 2004, and the superseding indictment was returned on November 24, 2009.[7] The long-established general rule is that a statute of limitations begins to run on the day following the day on which the event giving rise to the cause of action occurred. *See Burnet v. Willingham Loan & Trust Co.*, 282 U.S. 437, 439 (1931). The rule is reflected in Rule 45(a)(1)(A) of the Federal Rule of Criminal Procedure, which provides in pertinent part that "[i]n computing any time period . . . exclude the day of the event that triggers the

---

[7]    Both indictments charged that defendant's false statements on his Application were made on or about November 29, 2004. ER:699, 701-702, 710-711. It appears that the actual date that the Department of Homeland Security received defendant's application was November 24, 2004, as testified to by Jio, ER:500-501, and evidenced by the received date stamp on the first page of defendant's Application. SER:1.

period."  Applying that principle, the record shows that the grand jury returned the superseding indictment on the last day of the five-year statutory period and thus the additional charges are not time barred.

The limitation period begins to run only when all the elements of the underlying offense have been committed.  *See United States v. Beardslee*, 197 F.3d 378, 385 (9th Cir. 1999).  Both the original and superseding indictment charged defendant with a violation of 18 U.S.C. § 1015(a), which punishes "[w]hoever knowingly makes any false statement under oath, in any case, proceeding, or matter relating to, or under, or by virtue of any law of the United States relating to naturalization, citizenship, or registry of aliens."  This language makes clear that the false statement must be made in a "case," "proceeding," or "matter" of the United States.  Thus, presentation of the Application to the agency is an essential element of the offense.

As a result, defendant's contention that the crime was completed on September 19, 2004, when he signed the Application under penalty of perjury is not true.  AOB:28-29.  Had defendant signed the Application under penalty of perjury, placed it in his desk drawer, and never submitted it to the Department of Homeland Security, he would not be guilty of violating Section 1015(a).  Instead, the date that the agency received defendant's application -- November 24, 2004 -- is the date that the crime was complete because that is the date when defendant

made the false statement in a "case, proceeding, or matter relating to, or under, or by virtue of any law of the United States relating to naturalization." The superseding indictment was timely filed on that date in 2009.

> 2.    *The superseding indictment did not broaden or substantially amend the original charges*

If the Court disagrees, there is still no statute of limitations problem because the superseding indictment did not broaden or amend the original indictment. To determine whether a superseding indictment substantially broadens or amends a pending indictment, "it is appropriate to consider whether the additional pleadings allege violations of a different statute, contain different elements, rely on different evidence, or expose the defendant to a potentially greater sentence." *United States v. Liu,* 731 F.3d 982, 996-997 (9th Cir. 2013) (citations omitted). "The central concern in determining whether the counts in a superseding indictment should be tolled based on similar counts included in the earlier indictment is notice." *Id*. at 997. If the allegations and charges are substantially the same in the old and new indictments, the assumption is that the defendant has been placed on notice of the charges against him. *United States v. Pacheco*, 912 F.2d 297, 305 (9th Cir. 1990) ("[t]hat is, he knows that he will be called to account for certain activities and should prepare a defense") (citation omitted).

Here, the superseding indictment alleged conduct that arose from the same conduct alleged in the original indictment: the Department of Homeland Security's

receipt of defendant's sworn Application on November 24, 2004, and defendant's sworn interview on May 18, 2005.  The original indictment gave defendant notice that he would be called to account for his statements in his written Application and at his oral interview.  Consequently, defendant suffered no prejudice because expanding the details, underlying the charges did not constitute a substantial change in the superseding indictment.  *See United States v. Friedman*, 649 F.2d 199, 204 (3d Cir. 1981) (factual allegations in a superseding indictment did not change although some additional details were added).  Nor does the possibility of a greater sentence render the charges in the superseding indictment broader than those in the original indictment.  *See United States v. Sears*, *Roebuck & Co., Inc.,*785 F.2d 777, 779 (9th Cir. 1986) (citing *United States v. Banks,* 682 F.2d 841, 845 (9th Cir. 1982), where Court upheld a superseding indictment that provided a potentially higher penalty than the original indictment).

## III.    THE COUNTS IN THE SUPERSEDING INDICTMENT WERE NOT MULTIPLICIOUS

### A.    Standard Of Review

This Court reviews for plain error defendant's multiplicity challenge because, as defendant concedes, he failed to raise the issue below.  AOB:38; *see United States v. Zalapa*, 509 F.3d 1060, 1064 (9th Cir. 2007) ("[w]here a defendant fails to raise the issue of multiplicity of convictions and sentences before the district court, we review the district court's decision for plain error").

35

**B.    Background**

The superseding indictment charged defendant with violations of 18 U.S.C. §§ 1001(a)(1), 1015(a), and 1621 based on his Application received by the Department of Homeland Security on November 24, 2004, and his interview with Jio on May 18, 2005.  ER:699-705.  The district court instructed the jury as to the elements that the government must prove beyond a reasonable doubt for each separate offense.  *See* ER:224-227 (Section 1001(a)(1)); 228-229 (Section 1015(a)); 230-231 (Section 1621)).

**C.    Each Statutory Violation Required Proof Of A Separate Element**

An indictment is multiplicitous when it charges multiple counts for a single offense, thereby resulting in two penalties for one crime and raising double jeopardy concerns.  *United States v. Mancuso*, 718 F.3d 780, 791 (9th Cir. 2013) (citing *United States v. Stewart*, 420 F.3d 1007, 1012 (9th Cir. 2005)).  Counts are not multiplicitous if "each separately violated statutory provision requires proof of an additional fact which the other does not."  *United States v. Vargas-Castillo*, 329 F.3d 715, 718-719 (9th Cir. 2003).  This Court applies the test articulated in *Blockburger v. United States*, 284 U.S. 299 (1932), to assess whether the statutory provisions under which defendant was charged are really one offense.  *See United States v. Wahchumwah*, 710 F.3d 862, 869 (9th Cir. 2013).

36

Applying the *Blockburger* test, the Court asks "'where the same act or transaction constitutes a violation of two distinct statutory provisions . . . whether each provision requires proof of a fact which the other does not.'" *United States v. Overton*, 573 F.3d 679, 691 (9th Cir. 2009) (quoting *Blockburger,* 284 U.S. at 304). "[T]he Court's application of the test focuses on the statutory elements of the offense. If each requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes." *Albernaz v. United States*, 450 U.S. 333, 338 (1981) (citation omitted).

Reviewing each of the statutes charged here, it is clear that each requires proof of a fact that the other does not and that all three statutes thus meet the *Blockburger* test. Section 1001 punishes anyone who, "in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States," knowingly and willfully "falsifies, conceals, or covers up by any trick, scheme, or device a material fact." *See* 18 U.S.C. § 1001(a)(1). To prove a violation of Section 1001(a)(1), the government must prove (1) a statement, (2) falsity, (3) materiality, (4) specific intent, and (5) agency jurisdiction. *See* ER:225 (jury instructions given); *see also United States v. Camper*, 384 F.3d 1073, 1075 (9th Cir. 2004) (elements of Section 1001(a)(1)).

37

Section 1015(a) punishes anyone who "knowingly makes any false statement under oath, in any . . . proceeding . . . relating to naturalization, citizenship." *See* 18 U.S.C. § 1015(a). The government was required to prove that defendant (1) knowingly and willfully made a statement relating to naturalization or citizenship; (2) under oath orally or in writing; (3) that was false. *See* ER:228-229 (jury instructions given); *see also United States v. Youssef*, 547 F.3d 1090, 1093-1095 (9th Cir. 2008) (elements of Section 1015(a)).

Section 1621 prohibits anyone "having taken an oath before a competent tribunal, officer or person" to "testify, declare . . . or certify truly" or that any "written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true." *See* 18 U.S.C. § 1621(1). The elements of perjury are: (1) false testimony under oath; (2) concerning a material matter; (3) with the willful intent to provide false testimony. ER:230 (jury instructions given); *see also McKenna*, 327 F.3d at 838 (elements of Section 1621).

The statutory language of each of these charges makes plain that each required proof of a fact that the others did not. Sections 1015 and 1621 require that the statement be made under oath, while Section 1001 does not; Section 1015 does not require that the statement be material, while Sections 1001 and 1621 do; Section 1015 requires that the statement relate to naturalization or citizenship,

38

while Sections 1001 and 1621 do not.  *Compare* elements at ER:224-225 (Section 1001) to elements at ER:228-229 (Section 1015) to elements at ER:230 (Section 1621); *see also Youssef*, 547 F.3d at 1093-1095 (materiality is not an element of Section 1015).  Because each statute requires proof of a fact different from the other charged statutes, the charged counts are not multiplicious.

Also, the superseding indictment charged defendant with violating each statute twice based on defendant's criminal conduct on two different dates in the immigration process: first, the date that the Department of Homeland Security received defendant's under-oath Application, and second, the date on which Jio interviewed defendant under oath.  Defendant's presentation and affirmation of the lies in his Application on two different dates hindered the naturalization process at two different steps in the proceeding.  *See United States v. Awad*, 551 F.3d 930, 937-938 (9th Cir. 2009) (the indictment charging 24 counts of health care fraud was not multiplicious because defendant owed a "new and independent obligation to be truthful each time he submitted one of the 24 fraudulent claims charged in the indictment").

Defendant relies primarily on *United States v. Olsowy*, 836 F.2d 439 (9th Cir. 1988), AOB:41-42, where Olsowy was charged with one count of knowingly presenting a false claim, in violation of 18 U.S.C. § 287, and three counts of violating 18 U.S.C. § 1001, based on statements Olsowy made at two different

39

interviews and in a signed summary, denying receiving or cashing a Social Security check mailed to him. *Id*. at 440. On appeal, Olsowy raised two multiplicity claims. First, he argued the indictment was multiplicious because it charged violations of both Section 1001 and Section 287 based on the same false claim. Applying *Blockburger*, the Court rejected that contention because it found that while Olsowy's submission of a false claim to the Treasury Department in September 1985, and his false statements made to the Secret Service agent five months later, concerned the same general subject matter, under *Blockburger*, they stood independent of each other. *Id*. at 442. Second, Olsowy argued that the three Section 1001 counts were multiplicious because they alleged the same denials in response to the same questions posed to him by the same Secret Service agent. *Id*. at 442. The Court agreed with that argument because "the repetition of Olsowy's initial false statement did not further impair the operations of the government. . . . Once he misled the agent, repeating the lie adds little or nothing to the harm caused to the Secret Service's inquiry." *Id*. at 443.

The Court reached the opposite conclusion in *United States v. Salas-Camacho*, 859 F.2d 788, 790 (9th Cir. 1988), where the defendant made the same denials that he was importing merchandise into the United States from Mexico to two different customs inspectors. The Court found that Salas-Camacho's same denials to the second inspector "further impair[ed] . . . the orderly, efficient, and

40

accurate processing of the custom duties of the United States." *Id*. at 791. The Court distinguished *Olsowy* on the grounds that Salas-Camacho made his second false statement to a different official with different duties and "when an importer makes two separate false statements to two separate officials, each with distinct duties and functions at the frontier" both convictions under Section 1001 are proper. *Id*.

Here, defendant's false statements are like the false statements charged in *Salas-Camacho*, not the repetitive statements in *Olsowy*. After having lied on his Application, defendant's statements to Jio were an additional impairment to the functions of the Department of Homeland Security. As Jio explained, during the interview, his duty is to note changes, corrections, and additions to the Application, and then to make a recommendation based on the completed information. ER:490, 530. Indeed, the applicant is required to sign the Application at the end of the interview to certify that its contents are true and correct, including any corrections made at the interview. ER:276. The interview thus has a different function than the filing of the Application. It provided for additional fact gathering and required defendant to make corrections and update the Application. It is a different step in the process.

41

## IV.    DEFENDANT'S TRIAL BEGAN WITHIN THE SPEEDY TRIAL ACT TIME PERIOD

### A.    Standard Of Review

This Court reviews de novo "the district court's interpretation and application" of the Speedy Trial Act ("STA"), and the district court's findings of facts for clear error.  *United States v. Medina*, 524 F.3d 974, 982 (9th Cir. 2008).

### B.    Background

The STA began with defendant's initial appearance on the indictment before a Magistrate Judge on August 21, 2008.  CR:11; ER:665.  Over the next two years, primarily based on defendant's multiple continuance requests, the district court repeatedly excluded time from the STA computation.  *See* ER:665-668.

On February 22, 2010, the court set a hearing on defendant's motions for April 19, 2010, and trial for May 24, 2010.  ER:668.  The court excluded time from February 22, 2010, until May 24, 2010.  ER:668.

On April 19, 2010, attorney David Paulson made a general appearance on defendant's behalf (he was defendant's fourth attorney), requested additional time to review the pending defense motions, and asked for a continuance of the trial date.  ER:668.  The court set a new trial date of August 9, 2010, and excluded time between April 19, 2010, and August 9, 2010.  ER:668.

At a motion's hearing on May 24, 2010, the court denied all then-pending motions, except defendant's pro se motion to dismiss for violation of his speedy

42

trial right.  SER:3.  The court directed the government to submit a "calculation of the Speedy Trial clock time," and told defendant to advise the court if there were any objections to that calculation.  *Id*.  On May 27, 2010, the government filed a five-page "Speedy Trial Report" that detailed all STA exclusions, which included exclusions for defendant's competency examination and resolution of that issue, and for preparation of defense counsel each time that defendant changed attorneys.  *See* ER:666-667.  The government report concluded that 18 days remained on the Speedy Trial clock, and that it would expire on August 27, 2010.  CR:133; ER:665-668.  Defendant did not file any opposition to the government's calculation.

Defendant next appeared before the district court on August 5, 2010.  CR:143; ER:658.  At the outset, the court noted the "limited time" remaining "on the Speedy Trial clock," advised the parties that it was currently in trial until the end of the month, and asked for input on a trial date.  ER:659.  The government proposed September 27, 2010, based on defense counsel's concurrence and because the government was providing counsel discovery.  ER:659-660.  Defendant's new retained attorney, appointed on April 26, 2010, confirmed defendant's agreement to the September date, had "no difficulty" excluding time to the new date, and suggested that an issue pending before the Ninth Circuit on defendant's immigration case supported the asked-for continuance.  CR:128;

43

ER:660-661.  While the court's "gut reaction" was that the pending Ninth Circuit issue was not relevant, it invited defendant "to file a short brief on the issue" because it "could be persuaded otherwise."  ER:662.  The court continued the pretrial conference to September 13, 2010, and excluded time "needed for effective preparation" and in the "interest of justice."  ER:663.  Defendant did not object to the court's exclusion findings.  ER:663.

The next day, the parties filed a joint stipulation and proposed order excluding time under the STA.  CR:144; ER:656-657.  Defendant, through counsel, agreed to a STA exclusion from August 9, 2010, to September 27, 2010, "based on the defendant's need for continuity of counsel and effective preparation of counsel."  ER:656-657.  On August 16, 2010, the court signed the order excluding time from August 9, 2010, until September 27, 2010, finding that:

> [t]he ends of justice served by granting the requested continuance outweigh the best interest of the public and the defendant in a speedy trial.  The failure to grant the requested continuance would deny defense counsel reasonable time necessary for effective preparation, taking into account the exercise of due diligence, and would result in a miscarriage of justice.

CR:147; SER:6.  The court excluded time under 18 U.S.C. §§ 3161(h)(7)(A) and (B)(iv).  *Id*.

At a pretrial conference on September 16, 2010, defendant's attorney requested a continuance because of a "substantial personal issue" that had

44

"impact[ed]" his life for "the last few months." ER:647.  At side bar, with

defendant present, defense counsel explained his issue.  ER:651.  The court

continued the trial to October 25, 2010, and excluded time "for effective

preparation" and "continuity of counsel."  ER:653.  The court also found that "the

interest of justice outweigh the need of the defense or the public" and supported

the exclusion.  *Id*.  Defendant did not object.  ER:651-653.

At the October 25, 2010, pretrial conference, defense counsel asked "for the

court's ruling on whether or not we are within the speedy trial."  SER:8-9.  The

court could not remember whether it "officially gave a ruling" or whether it

"expected a response if there was a disagreement with the speedy trial calculation."

SER:9.  The court said it would look at the government's filed report to "see

whether or not that satisfactorily answers the issue on the speedy trial."  *Id*.

The next day, prior to jury selection, defendant personally addressed the

court to complain about discovery, the court's lack of jurisdiction over the case,

and "a speedy trial rule [that] is still pending in the air."  ER: 625, 627-630, 634.

The court responded, "I'll make it clear.  I'm denying all the motions here and

now."  *Id*.  The court subsequently filed a written order addressing the motions

filed by defendant "throughout the pendency of this case on behalf of himself even

though he has been represented by counsel."  ER:120.  The court made clear that it

"has considered all those motions and believes that it has either orally or in writing

45

ruled on each one," but to "ensure that the record is complete," the court "denies any motions for which there is not a ruling as a matter of record." *Id*.

## C. The Court Calendared Defendant's Trial Within the 70-Day Limit

Under the STA, a criminal defendant "must be brought to trial within seventy days of the indictment or his initial appearance before a judicial officer, whichever is later." *United States v. Murillo*, 288 F.3d 1126, 1133 (9th Cir. 2002) (citing 18 U.S.C. § 3161(c)(1)). The Act sets forth several types of "excludable delay," which do not count toward the 70-day limit. *See* 18 U.S.C. §§ 3161(h)(1) - (8). The "ends of justice" exclusion requires the court to "set [] forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by granting such continuance outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A); *see also Hickey*, 580 F.3d at 928. Simultaneous ends of justice findings are unnecessary as long as the court later shows that the delay was motivated by proper considerations. *See United States v. Ramirez-Cortez*, 213 F.3d 1149, 1154 (9th Cir. 2000).

Defendant's single STA claims is without merit because the unobjected-to Speedy Trial Report filed by the government demonstrated that defendant's trial was timely and because the district court's continuances of the trial thereafter were based on valid exclusions. Defendant's sole complaint is that the court continued the trial "the second to last time," on August 5, 2010, because of "court

46

congestion." AOB:43 But, the record plainly shows that, while the court advised the parties that it was presently presiding over a month-long trial, it did not exclude time under the STA for that reason. After hearing that the government was still providing defendant's fourth counsel discovery, the court specifically excluded time for "effective preparation." ER:663. Moreover, the next day, the parties filed a stipulation in which defendant agreed that time should be excluded "based on the defendant's need for continuity of counsel and effective preparation of counsel." ER:657. The court in its written order, drafted and proposed by the parties and submitted with their stipulation, made specific findings that "failure to grant the requested continuance would deny defense counsel reasonable time necessary for effective preparation, taking into account the exercise of due diligence, and would result in a miscarriage of justice." *Id*.; SER:6.

In *United States v. Shetty*, 130 F.3d 1324 (9th Cir. 1997), the defendant also argued that the court improperly delayed his trial due to calendar congestion. The defendant supported his complaint by emphasizing that the district court expressly stated at the pretrial conference that its next available trial date was October 3, 1995, and then continued trial to that date. *Id*. at 1328. The Court found that the order did not violate the Speedy Trial Act because "the order entered by the district court was *drafted* and *proposed* by the parties themselves and submitted with their stipulation." *Id*. at 1328 (emphasis in original). The Court acknowledged that

47

"court congestion cannot serve as a basis for a continuance," but found "no indication in the record that the defense ever requested an earlier trial date or that it withdrew its stipulation to continue the trial to October 3, 1995." *Id*. The Court continued that "[a]bsent notice that the defendant was withdrawing from the stipulation or requesting an earlier trial date, the district court had no reason to reset the trial on an earlier date," and defendant's Speedy Trial Act complaint was without merit. *Id*. Additionally, the ends of justice are served by allowing additional time to assure "continuity of counsel" and effective preparation. *See* 18 §§ 3161(h)(7)(A), (B)(iv); *see also Zedner v. United States*, 547 U.S. 489, 500 (2006).

The same holds true here. The record shows that for the one continuance that defendant now challenges on appeal, the court relied on the parties' stipulation, signed by defense counsel, which contained undisputed facts that supported the interest of justice finding. *See United States v. Palomba*, 31 F.3d 1456, 1462 (9th Cir. 1994) (where defendant stipulates to the need for trial preparation, he cannot maintain that continuances give rise to a violation of the Speedy Trial Act). Additionally, the district court satisfied the requirements of Section § 3161(h)(7) by limiting the continuance to a specific date (September 27, 2010), and by justifying the continuance on the record with reference to the facts as of the time the delay is ordered (*i.e*., "based on the defendant's need for continuity

48

of counsel and effective preparation of counsel"). *See* ER:656-657; *see also*

*United States v. Lewis*, 611 F.3d 1172, 1176 (9th Cir. 2010).

Defendant does not claim that these findings were clearly erroneous. Simply

put, defendant has failed to meet his burden of proving that his trial was "not

commenced 'within the time limit required by section 3161(c) as extended by

section 3161(h).'" *Medina*, 524 F.3d at 982 (quoting 18 U.S.C. § 3162(a)(2)).

## V.    THE COURT SHOULD REJECT DEFENDANT'S INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM

### A.    Standard Of Review

This Court reviews claims for ineffective assistance of counsel de novo.

*United States v. Nickerson*, 556 F.3d 1014, 1018 (9th Cir. 2009).

### B.    Background

The jury returned its guilty verdicts on November 2, 2010. CR:212; ER:80-

87. During trial, defendant's counsel did not move for judgment of acquittal under

Federal Rule of Criminal Procedure 29 ("Rule 29"), and post-trial, did not make

that motion or move for a new trial under Federal Rule of Criminal Procedure 33

("Rule 33"). On February 18, 2011, and March 15, 2011, defendant filed pro se

motions to vacate the jury's verdict for alleged speedy trial violations. CR:231,

240; ER:16-18; SER:11-46. Defendant did not challenge the sufficiency of the

evidence supporting his convictions in his pro se motions. *Id.* On April 8, 2011,

49

defendant's counsel filed a motion to continue sentencing and notice of intent to file a motion for new trial.  CR:257; ER:63.

At sentencing on April 11, 2011, defense counsel said that the continuance motion was at defendant's request to allow more time for them to review the presentence report, although counsel was prepared to orally present the objections to the court.  ER:13-15.  With regard to the new trial motion request, defense counsel explained that the basis of that request was "encompassed in [defendant's] motions that he has filed [pro se] thus far."  ER:16.  The court proceeded to list those motions, asked defense counsel if he "wish[ed] to add anything" (he did not), and then permitted defendant to argue.  ER:18-20, 22-34.  Defendant provided four additional motions to the court and advised that he intended to file two more.  ER:20-21.  After imposing sentence, the court denied defendant's pro se motions.  ER:72-74.

The court determined that defendant's sentencing Guidelines range was 21 to 27 months and an above-range sentence "appropriate."  ER:65-66.  The court observed that defendant is "obviously very bright and has a lot of talents," but was "concerned that he's somewhat, I guess manipulative is the best term based on what he's been convicted for."  ER:66.  After considering "the factors in [18 U.S.C. §] 3553," the court departed upward to send "a message of deterrence, both as to Mr. Abpikar and as to others who might choose to engage in such activity."

50

ER:67.  The court sentenced defendant to a term of imprisonment "of 36 months on counts one through six, all counts to be served concurrently with each other." ER:67.

### C.    Defendant's Claim Should Be Denied Or Addressed In A Habeas Proceeding

Defendant argues that this Court must reverse his conviction because he received ineffective assistance of counsel.  AOB:52.  In particular, defendant claims that his trial counsel's decision to not make Rule 29 and Rule 33 motions rendered counsel ineffective.  AOB:53.  As a "general rule" this Court does "not review challenges to the effectiveness of defense counsel on direct appeal." *United States v. Rahman*, 642 F.3d 1257, 1259 (9th Cir. 2011).  "Such claims normally should be raised in habeas corpus proceedings, which permit counsel to develop a record as to what counsel did, why it was done, and what, if any, prejudice resulted." *McKenna*, 327 F.3d at 845 (citation omitted).  The only exceptions are when "the record on appeal is sufficiently developed to permit review and determination of the issue," or "the legal representation is so inadequate that it obviously denies a defendant his Sixth Amendment right to counsel." *Rahman*, 642 F.3d at 1260 (citations omitted).

To the extent that the record is sufficiently developed, it fails to support defendant's claim that he received ineffective assistance of counsel.  First, defendant argues trial counsel was per se ineffective for not making a Rule 29 and

Rule 33 motion. AOB:53. But, in asserting his challenge, defendant acknowledges that a "valid reason" not to make the motions would have been if "there were no arguable, but only frivolous, grounds" to support the motion. AOB:53. He also concedes that "there is a limited class of cases where it is obvious that there is no valid tactical reason" to makes these motions. AOB:54. Here, the record plainly shows that a valid reason supported trial counsel's decision to not make a Rule 29 and Rule 33 motion in this case: overwhelming evidence proved defendant's guilt on each charge. Counsel is not required to file a motion that he knows is meritless. *See Lowry v. Lewis*, 21 F.3d 344, 346 (9th Cir. 1994).

Second, if the Court considers defendant's claim on direct appeal, it should deny it because even if the Court found trial counsel deficient, defendant must also prove prejudice, which, on this record, he cannot do. To establish prejudice, defendant must show that "there is a reasonable probability" that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Hovey v. Ayers*, 458 F.3d 892, 904 (9th Cir. 2006) (internal quotations omitted); *see Strickland v. Washington*, 466 U.S. 668, 694 (1984). It is defendant's burden to demonstrate a reasonable probability that had the motions been made, the district court would have granted them, something he cannot do on this record.

Here, the record clearly shows it would have been futile for counsel to make these motions because overwhelming evidence left no doubt as to defendant's guilt on each charge. *See United States v. Feldman*, 853 F.2d 648, 665-666 (9th Cir. 1988) (failure to make a Rule 29(b) motion was not ineffective assistance because the crimes charged "were supported by sufficient evidence"). That the trial court deemed the evidence here more than sufficient to establish defendant's guilt is reflected by the court imposing an above-Guidelines sentence and characterizing defendant's conduct as "manipulative." ER:66.

Finally, defendant cannot establish prejudice by claiming that he is subjected to a heightened level of review on appeal. This Court has noted that plain-error review of a sufficiency claim is only "theoretically more stringent" than the standard for a preserved claim. *See Cruz*, 554 F.3d at 844 ("We say 'theoretically' because, while plain-error review appears more stringent in theory, it is hard to comprehend how a standard can be any more stringent in actuality than that ordinarily applied to sufficiency-of-the-evidence challenges."); *see also United States v. Garcia-Guizar*, 160 F.3d 511, 517 (9th Cir. 1998) (noting that even under plain-error review, a court should not "affirm a conviction . . . if the record clearly showed that the evidence was insufficient"). Thus, defendant cannot show prejudice because his sufficiency claim on appeal is reviewed de novo despite

53

counsel's failure to make a Rule 29 and/or Rule 33 motion.  His ineffective

assistance of counsel claim should be denied.

## CONCLUSION

For the reasons set forth above, this Court should affirm the judgment of the

district court.

Dated: January 28, 2014                    Respectfully submitted,

                                           MELINDA HAAG
                                           United States Attorney

                                           BARBARA J. VALLIERE
                                           Chief, Appellate Division

                                           /S/ LAURIE KLOSTER GRAY
                                           LAURIE KLOSTER GRAY
                                           Assistant United States Attorney

                                           Attorneys for Plaintiff-Appellee
                                           UNITED STATES OF AMERICA

## STATEMENT OF RELATED CASES

Pursuant to Rule 28-2.6(a) of the United States Court of Appeals for the

Ninth Circuit, counsel for the United States of America states that she is not aware

of related cases to this appeal.

Dated: January 28, 2014                    /S/ LAURIE KLOSTER GRAY
                                           LAURIE KLOSTER GRAY
                                           Assistant United States Attorney

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32 (a)(7)(C) and Ninth Circuit Rule 32-1, I certify that:

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because:

 X    the brief contains 12,079 words, excluding the graph/table on page 5 and the parts of the brief exempted by Fed. R. APP. P. 32(a)(7)(B)(iii); or

____    this brief uses a monospaced typeface and contains ____ lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. (32)(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

X    the brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 program, with 14-font size Times New Roman style; or

____    the brief has been prepared in a monospaced spaced typeface using _____program with ____characters per inch and _____style.

Dated: January 28, 2014                    /S/ LAURIE KLOSTER GRAY
                                           LAURIE KLOSTER GRAY
                                           Assistant United States Attorney

56

## CERTIFICATE OF SERVICE

I, Hui Chen, certify that I am an employee of the Office of the United States Attorney, Northern District of California, a person over 18 years of age and not a party to the within action. I certify that on January 28, 2014, I electronically submitted the

- **Brief for the United States as Appellee**
- **Government's Supplemental Excerpts of Record (1 Volume)**

in the case of *United States v. Hassan Abpikar*, CA 11-10192, with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit, by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Dated: January 28, 2014                    /s/ *Hui Chen*
                                            Hui Chen
                                            Legal Assistant